In the Matter of the Application of PENNSYLVANIA WHISKEY DISTRIBUTING CORP., Petitioner, to Review an Order of HENRY E. BRUCKMAN and Others, Constituting the State Liquor Authority of the State of New York, Respondents, Which Order Suspends a License Heretofore Issued to the Said Pennsylvania Whiskey Distributing Corp. to Operate a Rectifying Plant and to Sell Alcoholic Beverages at Wholesale and Forfeits the Bond Filed by the Said Licensee in Connection with the Issuance of the Said License.

First Department, May 5, 1939.

*Samuel Robert Weltz* of counsel [*Benjamin M. Franklin* with him on the brief], for the petitioner.

*Monroe I. Katcher, II,* of counsel [*Francis V. McHugh, Counsel for State Liquor Authority*], for the respondents.

UNTERMYER, J.   In October, 1937, the petitioner received from the respondent State Liquor Authority a renewal of its distiller's Class B license as a rectifier and wholesaler for the year ending September 30, 1938, in connection with which it paid the annual license fee of $5,000 and duly filed a surety bond in the penal sum of $10,000.

Thereafter, upon complaints of certain retail licensees, the Authority, on May 26, 1938, instituted revocation proceedings charging the petitioner with violation of paragraph (c) of subdivision 1 of section 101 of the Alcoholic Beverage Control Law, " in that it rendered a gift or service directly or indirectly, to wit: giving away or offering to give away free of charge one barrel of liquor to [certain named] persons licensed by the State Liquor Authority, which service or gift tended to influence said aforementioned licensees to purchase the product of  *  *  *  the licensee herein."

After hearings at which testimony was given by certain of the petitioner's customers and various representatives of the petitioner, the charges were sustained and on September 8, 1938, the Authority revoked the petitioner's license and directed the forfeiture of its bond.   Upon rehearing, however, the Authority rescinded its order of revocation and on September 21, 1938, issued a superseding order, now under review, which, instead of revoking, suspended the petitioner's license for the balance of the license period and directed forfeiture of the petitioner's bond.

The charge against the petitioner followed the language of the statute, which in subdivision 1 of section 101 provides:

" Manufacturers and wholesalers not to be interested in retail places.   1. It shall be unlawful for a manufacturer or wholesaler licensed under this chapter to  *  *  *

" (c) Make any gift or render any service of any kind whatsoever, directly or indirectly, to any person licensed under this chapter which in the judgment of the liquor authority may tend to influence such licensee to purchase the product of such manufacturer or wholesaler."

The substance of the charge against the petitioner is that it followed the practice of offering free merchandise in order to influence retail licensees to purchase its products. The Authority produced six witnesses who in effect testified that when they purchased ten barrels of whiskey the petitioner's salesman would agree on behalf of the petitioner to supply " free " one extra barrel, so that eleven barrels would be sold for the price of ten.

The defense was that the whiskey sold by the petitioner was of an average age of between twelve and fifteen months at the time the petitioner received orders from its customers, and that during this " aging " period there is a " shrinkage," known in the trade as " outage," caused by absorption and evaporation, of approximately ten per cent of the original contents. A " shrinkage " to this extent appears to be recognized by the United States Treasury Department, Bureau of Internal Revenue. To compensate for that loss, so that the customer would receive the ten full barrels of whiskey contracted for, the petitioner would furnish an additional barrel to customers who ordered ten barrels of whiskey.

Certain of the Authority's witnesses testified that the petitioner's salesmen made no reference to " outage " but told them that the " free " barrel was supplied as an inducement to help pay their retail license fee. The petitioner's salesmen contradicted this testimony and its manager testified that he had never authorized the salesmen to offer free merchandise for the purpose of inducing sales. The most effective contradiction, however, is to be found in the written contracts, signed by each customer, describing the additional barrel as " outage." Upon receipt of an order, the petitioner would immediately confirm by letter the sale of eleven barrels. If it were necessary to decide the question we would be inclined to the opinion that on that issue of fact the determination of the Authority is against the weight of the evidence. It is, however, immaterial which of these versions is true, for in our opinion an agreement by the petitioner to furnish an additional barrel to purchasers of ten barrels did not, as matter of law, constitute a gift.

A " gift " is a voluntary transfer of property without any consideration or compensation therefor. (*Gray* v. *Barton*, 55 N. Y. 68; *McKenzie* v. *Harrison*, 120 id. 260; *Matter of Van Alstyne*, 207 id. 298.) "A sale is defined as any transfer of title or possession, or both, for a consideration." (*Matter of Sears, Roebuck & Co.* v. *McGoldrick*, 279 N. Y. 184.) If, then, the additional barrel of whiskey was furnished in consideration of the purchase of ten other barrels, how can it be said to constitute a " gift " made without consideration? In theory, the arrangement consisted of a

collateral agreement by which the petitioner undertook to supply the additional barrel of whiskey in consideration of the purchase of ten other barrels. (*Mitchill* v. *Lath*, 247 N. Y. 377.) Considered more realistically, it was the sale of eleven barrels for the price of ten. (Compare *People* v. *Miller*, 271 N. Y. 44; *People ex rel. Ellison* v. *Lavin*, 179 id. 164, 168.) Although it is true, no doubt, that an additional barrel would, in the language of the statute, " tend to influence such licensee to purchase the product of such manufacturer or wholesaler," as would a reduction in the purchase price, that is not an offense under the statute unless it is accomplished through the medium of a " gift." The practice at which the statute appears to have been directed was the furnishing of free liquor, in large or small quantities, in order to influence the patronage of retailers. It was not intended to regulate the price at which liquor might be sold by prohibiting a reduction in price resulting from a contract to deliver a larger quantity of liquor.

It is also suggested by the Authority that under the statute it may define the act which shall constitute a " gift." The statute does not sustain that interpretation. It does not render illegal every gift but only such as " in the judgment of the Liquor Authority " may tend to influence the retailer. It appears to have been recognized that instances might arise of a " gift " or " service " by a manufacturer to a retailer which would not tend to influence his business. Accordingly, before the statute may be held to have been violated it is necessary that both these conditions shall occur. The Authority may not create an offense by ascribing to the statute a meaning which is not justified by its terms.

The determination should be annulled, with fifty dollars costs and disbursements to the petitioner.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Determination unanimously annulled, with fifty dollars costs and disbursements.