## WHITMORE OXYGEN CO. v. STATE TAX COMMISSION.

No. 7154. Decided August 26, 1948. (196 P. 2d 976)

Rehearing Denied January 4, 1949.

1

2

See 53 C. J. S. Licenses, sec. 30. Constitutionality, construction and application of general use tax or other compensating tax designed to complement state sales tax, see note, 129 A. L. R. 222. See, also, 47 Am. Jur. 257.

Rehearing denied January 4 ,1949.

*Callister, Callister & Lewis,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *G. Hal Taylor,* of Salt Lake City, for defendant.

LATIMER, Justice.

The case is here on an agreed statement of facts. The Whitmore Oxygen Company, plaintiff herein, is a local manufacturing company engaged in the sale of oxygen, acetylene and other bottled gases. On April 18, 1941, it

entered into a written contract with the Linde Air Products Company, an Ohio corporation, whose manufacturing plant is located at Speedway, Indiana, whereby plaintiff agreed to buy and the Linde Company agreed to sell 1600 acetylene cylinders for the sum of $34,600 f. o. b. factory, Speedway, Indiana. Under the contract, title remained in the vendor until the full purchase price, which was payable in installments, had been paid. The contract and record are silent as to the place of delivery and the payment of freight cost. By March 30, 1943, the contract had been fully performed by both parties. On November 21, 1947, the State Tax Commission made the deficiency use tax assessment complained of in these proceedings.

During the entire period involved, i. e. from January 1, 1941, to the date of the deficiency assessment in 1947, the plaintiff has filed every two months with the Tax Commission, the Commission's Form 71, captioned "Sales Tax and Use Tax Return." We include a copy of this form for reference purposes:

"Sales Tax and Use Tax Return

* * * * *

"Amount Subject to Sales Tax

"1. Total Sales as defined in Sales Tax Act (include both cash and credit sales and the fair market value of property accepted in trade or barter) ..................$............

"2. Add—Value of tangible personal property originally purchased for resale (without tax) and subsequently used or consumed rather than resold ............... ............

"3. Total (Item 1 plus Item 2) ......................$............

"4. Less—Allowable Deductions (Details must be shown in Schedule on back hereof) ......................... ............

"5. Net Taxable Sales Subject to Sales Tax (Item 3 less Item 4) ........................................$............

"Amount Subject to Use Tax

"6. Sales—Total sales upon which you are responsible for collection of Use Tax (see 'Instructions') ............$............

"7. Purchases—Total purchase price of tangible personal property purchased for storage, use, or other consumption in this state on which the seller has not collected Sales or Use Tax (see 'Instructions') ............... ............

"8. Total Amount Subject to Use Tax (Item 6 plus Item 7) ...........................................$...............

"Computation of Tax

"9. Total Sales Tax due and payable—2% of amount shown in Item 5 ................................$...............

"10. Total Use Tax due and payable—2% of amount shown in Item 8 ......................................... ...............

"11. Total Sales Tax and Use Tax Due and Payable (Item 9 plus Item 10) ................................$...............

\* \* \* \* \*

"Certificate

"I Hereby Certify, That I have examined this return and that the statements made and the figures shown herein and in any accompanying schedules are to the best of my knowledge and belief a true and complete return, made in good faith for the period stated, pursuant to the Emergency Revenue Act of 1933, as amended, and the Use Tax Act of 1937 and regulations issued under authority of both acts.

\* \* \* \* \*

"The plaintiff has never placed figures or a mark of any kind in that portion of the form pertaining to use tax, but it has always signed, by its proper officer, the printed certification found at the bottom of the form."

A hearing was had before the Tax Commission and on the facts, as stipulated, the Commission found that plaintiff had filed no use tax return during the period January 1, 1941, to December 31, 1946; had failed to remit to the Commission any use tax on the 1600 acetylene cylinders; that the sale of the cylinders was a sale in interstate commerce; and that the sale was consummated in Indiana and was therefore subject to the Utah use tax and not the Utah sales tax. The Commission then ordered payment of $1246.81 as the amount owed by plaintiff as use tax on the cylinders.

The plaintiff admits that no sales or use tax has ever been paid on the sale or use of the cylinders, in Utah or elsewhere, but contends that the tax should not now be collected for the following reasons: (1) The sale was consummated in Utah, was subject to Utah sales tax, and any action to recover the tax on this sale is barred by the statutes of limitation found in 104-2-24 10, 104-2-30, and 80-15-8, U. C. A. 1943. (2)

Should it be determined this was an Indiana sale, the use of these cylinders is exempt from use tax by the provisions of 80-16-4(d) U. C. A. 1943, because being an Indiana sale it is subject to the Gross Income Tax Act of Indiana, Burns' Ann. St. § 64-2601 et seq. (3) If a use tax was due the State of Utah on the cylinders, Tax Commission Form 71, as filed by plaintiff, constituted a use tax return for the purpose of starting the statutes of limitation and the period of limitations has now run. We shall treat the questions raised by plaintiff's contentions in the order they are set out above.

(1) Whether the Commission erred in finding that the transaction in question was a completed sale in Indiana will depend upon the law of that state. Beale, Conflicts of Law, Vol. II, p. 981; 15 C. J. S., Conflict of Laws, § 13, p. 905. Although we will not take judicial notice of the laws or statutes of a sister state, if the law of the foreign state is neither pleaded nor proved, it will be presumed that the law of the foreign state is the same as the law of this state. *Grow* v. *Oregon Short Line Railroad Co.*, 44 Utah 160, 138 P. 398, Ann. Cas. 1915B, 481; *Dickson* v. *Mullings*, 66 Utah 282, 241 P. 840, 43 A. L. R. 136. Apparently, neither party considered Indiana law to be at variance with Utah law because neither one has made the law of that state part of the record. Under these circumstances, we must view the transaction under our statutes. Section 81-2-2, U. C. A. 1943, provides that property in specific goods passes according to the intent of the parties. To ascertain that intention the statute directs us to consider the terms of the contract, conduct of the parties, usage of trade and circumstances of the case. The contract in the instant case provides that the Linde Company shall retain title to the goods until full payment has been made. However, Section 80-15-2(b) U. C. A. 1943, expressly provides:

"The term 'sale' or 'sales' includes installment and credit sales, and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale, and also includes the sale of electrical energy, gas, services or entertainment taxable under the terms of this act. *A transaction whereby the possession of property*

*is transferred but the seller retains the title as security for the payment of the price shall be deemed a sale."* (Italics added.)

Under this statute, the fact that the seller retains title to secure payment of the purchase price will not prevent the transaction from amounting to a sale within the meaning of the Sales Tax Act.

The contract in issue contains the following provision:

"The purchase price of said cylinders, including acetone and valves, shall be $19.00 each for cylinders of 100 cubic foot capacity and $29.50 each for cylinders of 300 cubic foot capacity f. o. b. our manufacturing plant at Speedway, Indiana."

The f. o. b. provision is somewhat uncertain as to whether is merely refers to the Linde Company's factory as the place where the purchase price was computed, or whether the parties intended that the Linde Company should thereby become obligated to put the cylinders free on board at Speedway, Indiana. For the purposes of this action, it makes little difference because the liability of plaintiff remains the same whichever interpretation is adopted.

If we assume that the f. o. b. provision was only used to establish the purchase price, then we look to other provisions of the contract to ascertain when the parties intended the property to pass. The only obligation placed upon the Linde Company by the contract other than the obligation of furnishing the cylinders themselves, was to stamp such serial numbers on the cylinders as should be supplied by plaintiff. Section 81-2-3, Rules (1) and (2) U. C. A. 1943, provides that the property in specific goods does not pass until the goods have been unconditionally appropriated to the contract. However, when goods have been appropriated, then in the absence of any provision to the contrary, the property in the goods passes to the purchaser. In treating this type of situation, Professor Williston, in his work on Sales, 2d Ed., Section 265, has this to say:

"When the seller has completed any act remaining to be done by him, the property will thereupon pass without further expression

of assent by the parties. \* \* \* As will be seen, appropriation by the seller in accordance with prior authority immediately transfers the property without notice, and without further expression of assent; so here, as by the terms of the bargain, the seller is to do something further to the goods, and as the property would presumably pass at once were it not for this circumstance, the buyer must be assumed to assent not only to the goods being prepared as the bargain provides, but also that the property shall pass when they are so prepared."

Under this view, the sale was complete when the Linde Company placed the cylinders in a deliverable condition at its factory in the state of Indiana.

If we now assume that the contract obligated the Linde Company to deliver the cylinders free on board at its factory, when the cylinders were delivered either to plaintiff or a carrier the transaction was a completed sale in Indiana for tax purposes. The necessary implication of an f. o. b. contract is that the buyer shall be at all expense and bear all risk of loss after the goods are delivered free on board, and there is a presumption that the property in the goods passes when the goods have been so delivered, and that the place where the goods are to be delivered f. o. b. shall be the place of delivery to the buyer. See Williston on Sales, 2d Ed., Section 280(b). Under this view, when the cylinders were delivered free on board at Speedway, Indiana, the property in the goods passed and the sale was complete.

A provision of the contract relied upon by plaintiff as going to prove the parties did not intend the transaction to be an Indiana sale is this:

"The validity, interpretation and performance of this agreement shall be governed by the laws of the State of Utah."

This provision was made a part of the agreement in order that any dispute arising in Indiana, Utah, or elsewhere, concerning the validity, interpretation or performance of this contract, should be determined under Utah law. There may have been many reasons why the parties chose to be bound by Utah law rather than the law of Indiana. Any one or

more of the other provisions of this contract may have been more favorable to one or both parties in this state, or plaintiff may have demanded it as a matter of convenience. A provision of a contract which may have been included for any one of several purposes, is not helpful in aiding the court to find the specific intent of the parties regarding any one of these matters dealt with in the contract.

Plaintiff further relies upon that provision of the contract binding it to pay on demand to the Linde Company any sales, use or other excise tax for which the Linde Company might be liable, as going to prove the transaction to be a Utah sale. Plaintiff contends the parties did not intend a sale in interstate commerce consummated in Indiana as found by the Commission, because had they so intended, this provision of the contract would then be meaningless inasmuch as the commerce clause of the Federal Constitution, art. 1, § 8, cl. 3, would prevent the levy of a state tax on the transaction, and appellant in no event would be liable to the Linde Company for any tax. This provision, however, is not helpful as indicating the intent of the parties because it is quite possible that Linde Company, when entering the contract, was uncertain as to what, if any, tax would be properly levied on the transaction and desired protection from any and all taxes that might be assessed. Had the Linde Company felt the transaction amounted to a Utah sale, as plaintiff contends, the provision we would expect the parties to place in the contract would require plaintiff to reimburse the Linde Company for the Utah sales tax, or, more probably, the contract would show the purchase price plus the Utah sales tax. The fact that Linde Company required plaintiff to be liable for any *sales, use or other excise tax for which Linde Company may be liable* indicates that the parties were uncertain as to what, if any, tax could be properly assessed by either state. This provision is therefore equivocal and of no aid in showing the intent of the parties.

We conclude that for tax purposes, the sale of the cylinders was consummated in Indiana. ∎

(2) While admitting no sales tax on the cylinders has ever been paid to the state of Indiana, plaintiff argues that should we determine the sale was consummated in Indiana, the use of these cylinders in Utah ■ is exempt from taxation under the provisions of 80-16-4(d) U. C. A. 1943. That statute specifically exempts the use, storage or consumption of personal property from taxation where:

"Property, the gross receipts from the sale, distribution or use of which are now subject to a sale or excise tax under the laws of this state or of some other state of the United States."

Plaintiff contends that as an Indiana sale, the transaction would be subject to taxation under the Indiana Gross Income Tax Act of 1933, which is said to be a general sales tax act. However, in the case of *J. D. Adams Mfg. Co.* v. *Storen*, 304 U. S. 307, 58 S. Ct. 913, 916, 82 L. Ed. 1365, 117 A. L. R. 429, the United States Supreme Court held the Indiana Gross Income Tax Act of 1933, as applied to the gross receipts of corporations whose income is largely derived from sales to customers in other states and foreign countries, was unconstitutional. The court there said:

"* * * Appellant's sales to customers in other states and abroad are interstate and foreign commerce. * * * The vice of the statute as applied to receipts from interstate sales is that the tax includes in its measure, without apportionment, receipts derived from activities in interstate commerce; and that the exaction is of such a character that if lawful it may in substance be laid to the fullest extent by states in which the goods are sold as well as those in which they are manufactured. Interstate commerce would thus be subjected to the risk of a double tax burden to which intrastate commerce is not exposed, and which the commerce clause forbids. * * *"

We have before us a sale in Indiana to a customer in Utah. The sale is, then, one which the Supreme Court of the United States has said may not be taxed by the State of Indiana, under the Indiana Gross Income Tax Act of 1933. The exemption from taxation provided for by Section 80-16-4(d) U. C. A. 1943, applies only where the property is subject

to a sales or excise tax under the laws of this or some other state. Under these circumstances, it is apparent that plaintiff's claim of exemption is without merit.

(3) Plaintiff asks us to declare the forms filed by it to be sufficient to start the statute of limitations running and in support of this request cites *Zellerbach* ■ *Paper Company* v. *Helvering,* 293 U. S. 172, 180, 55 S. Ct. 127, 131, 79 L. Ed. 264, 269, wherein the United States Supreme Court held:

> "Perfect accuracy or completeness is not necessary to rescue a return from a nullity, if it purports to be a return, is sworn to as such, (citing cases) and evinces an honest and genuine endeavor to satisfy the law."

While we concede the rule there announced, it has no application here. The fact that the Tax Commission has made it possible to file both a use and a sales tax return on the same form does not mean that a filing of one shall constitute a filing of both. Were we to decide otherwise, we would obviate all necessity for the taxpayer to file a use tax return at all. Plaintiff contends that the taxpayer is often at a loss to know whether to file a return for sales tax or use tax on a given transaction; that inasmuch as both taxes constitute but one comprehensive taxing system, if the taxpayer files a Form 71 making entries only as to sales tax and signs the printed certification, it should be considered both a sales and a use tax return for the purpose of starting the running of the statute of limitations. In support of this view, plaintiff cites the regulation of the Tax Commission which provides that it may be unnecessary for the taxpayer to determine which tax is technically applicable. That regulation, however does not improve plaintiff's position. It offers an excuse for an erroneous filing where the taxpayer, being confused, has filed a sales tax return when he should properly file a use tax return. Plaintiff may not claim it has been confused concerning how to file for it has never attempted to file a return for the use *or* the purchase of the

cylinders. The instant case is not a case of an erroneous filing—it is rather a case of no filing at all.

Does the fact that plaintiff signed the certificate at the bottom of Form 71, even though it has never placed figures, words or marks of any kind in the space reserved for use tax entries, require a holding that plaintiff filed a use tax return? While the latter part of the certfication states the form is filed pursuant to the Sales Tax Act, U. C. A. 1943, 80-15-1, et seq., *and* the Use Tax Act, U. C. A. 1943, 80-16-1 et seq., the first part of the certification must also be considered. The taxpayer certifies that *"the statements made and the figures shown herein and in accompanying schedules"* comprise to the best of his knowledge and belief a true and complete return. Although the certification might have been more carefully drafted, it will be noted that the taxpayer is certifying to the *statements* he has made and *figures* he has shown. If no marks, words or figures were placed on the form at all, but the taxpayer merely signed the printed certification, the form so filed would not constitute a return for either sales tax or use tax. Plaintiff in effect concedes this but contends that if the form is filled in as to sales tax, and the certification is then signed, Form 71 becomes a use tax return as well. The fact that the Tax Commission has made it possible to make a return for both sales and use tax on the same form, does not do away with the necessity of furnishing information as to both taxes. The form is so designed that the entries for each tax are severable and if the taxpayer intends to claim a return for both taxes some words or figures should be entered in both divisions of the form. The plaintiff not having by words, statements, or figures indicated in the body of the use tax division of the form that it intended this portion of the form to be treated as part of the completed form, we hold the return was not sufficient to start the statute of limitations running against a use tax.

In the recent case of *Commissioner of Internal Revenue* v. *Lane-Wells Co.*, 321 U. S. 219, 64 S. Ct. 511, 513, 88 L. Ed. 684, the corporate taxpayer, in good faith, filed its income

tax return and therein denied it was a personal holding company subject to a surtax imposed upon such corporations. On discovering its liability for the surtax, the taxpayer contended the income tax return was equivalent to both an income tax and a surtax return which had started the running of the statute of limitations on the surtax. The Supreme Court held that even though the income tax return showed all facts necessary for the Commissioner to compute the taxpayer's liability as a personal holding company, a separate surtax return was required to start the period of limitations. The court said:

"Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of selfassessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangment that the physical task of handling and verifying returns may be readily accomplished. * * *"

The same reasoning applies to the case at bar. If the returns as filed by plaintiff be held to constitute returns of both sales and use tax, then admitting there is "tax information in some form," it is not present with "such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." This requirement is reasonable and necessary to expedite the system of self-assessment upon which our sales and use taxation is founded.

The Circuit Court of Appeals for the 10th Circuit in the case of *John D. Alkire Investment Co.* v. *Nicholas,* 114 F. 2d 607, at page 610, referring to a similar situation said:

"* * * Meticulous accuracy, perfect completeness, or absence of any omission is not exacted. But a return which fails to comply in a substantial degree with the requirements of the statute in respect to disclosing the requisite information essential to the making of assessments does not suffice to start the period of limitation."

We hold that on authority and principle, the returns filed by plaintiff did not commence the running of the period of limitations. To successfully contend that a return within the meaning the Use Tax Act has been filed, the plaintiff must be able to show it has filed a return apprising the Tax Commission that it claims no use tax is due or that a stated amount is due. Should the plaintiff mistakenly file a sales tax return on a given transaction where it should properly have filed a use tax return, its mistake is excusable and no further tax need be assessed.

For these reasons, the order of the Tax Commission is affirmed. Costs to defendants.

McDONOUGH, C. J., and WADE AND WOLFE, JJ., concur.

PRATT, Justice (dissenting).

I dissent. The "Sales Tax and Use Tax Return" *furnished by* the Tax Commission is, upon its face, a very compact form in which parts of matters of both taxes are intermingled; and items are numbered consecutively without regard to the particular tax involved.

To me the important parts of the form as indicating the intent of the taxpayer are the title, the consecutive numbers and the certificate. That certificate says in so many words that the return is intended as a return under the Use Tax Act as well as the Sales Tax Act. Reference to the former is not stricken out. The title covers both taxes.

Now let us examine how the taxpayer filled the form out. Items 1 and 5 of "Amount Subject To Sales Tax" contain figures. Items 2, 3 and 4 thereof are blank—they do not contain the words "none" or the figure zero. Obviously as blanks they are intended as a negative, as much as if "none" or a zero had been included. In other words, the taxpayer certifies that nothing goes in these blanks.

Items 6, 7 and 8 under "Amount Subject To Use Tax" are blank. The taxpayer has indicated above in items 2, 3 and 4 that blanks mean a negative. What has changed that intent? Nothing.

Items 9 and 11 contain figures and item 10 is blank— again an implied negative in item 10. Note that this part of the return is entitled "Computation of Tax," obviously referring to both taxes if there are any. The Use Tax, of course, was not computed as there was nothing in the return covering Use Tax to compute.

To hold that Use Tax was not intended to be covered by the return because some notation to that effect does not appear on the face of the return, is hyper-technical; and completely overlooks a very natural and human assumption that if blanks are sufficient for a negative in one place on a form of consecutively numbered items, they are in another. Furthermore, who should bear the burden of a mistake of interpretation? Suppose the taxpayer had, in line 6, placed a zero, and that was the total of entries under Use Tax. If that didn't satisfy the Commission, would it be the fault of the taxpayer? What taxpayer is qualified to read the mind of the Commission?

It seems clear that this is a single return, intended to cover both taxes, and that any entry upon its face would be sufficient to cover both taxes, unless there is some act or statement—as for example, erasures or lining out in the certificate to indicate that the form is intended to refer to only one of the taxes.