**FRANKLIN FIBRE-LAMITEX CORPORATION, Appellant, Respondent Below,**

v.

**DIRECTOR OF REVENUE, Appellee, Petitioner Below.**

Superior Court of Delaware, New Castle County.

Submitted: Feb. 8, 1985.

Decided: Aug. 28, 1985.

Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for appellant.

J. Patrick Hurley, Wilmington, for appellee.

Norris P. Wright and Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, for C.E. Minerals, Inc., amicus curiae.

GEBELEIN, Judge.

This is an appeal by Franklin Fibre-Lamitex, petitioner below, from a decision of the Tax Appeal Board dated March 9, 1984 upholding a decision of the Director of Revenue including certain sales of appellant within those sales upon which a gross receipts tax would be imposed and assessing taxes thereon. C.E. Minerals, Inc., a subsidiary of Combustion Engineering, a corporation having its principal place of business in Stamford, Connecticut, was granted leave to appear as amicus curiae in this appeal as it has a similar case pending before the Tax Appeal Board. Appellant is a Delaware corporation with its principal place of business in Wilmington and is also a "wholesaler" as defined by 30 *Del.C.* Chapter 29.

According to the stipulated facts, a large percentage of appellant's sales are made by common carrier to out-of-state buyers F.O.B. (free on board) a shipping point lo-

cated in Delaware.[1] This means that the buyer pays shipping costs, bears the risk of loss, and acquires title to the goods. See p. 3–4, *infra.*

The first issue presented by this appeal is whether the above sales were made "within this State" as that term is used in 30 *Del.C.* § 2902(c) which states "every wholesaler shall also pay a license fee at the rate of 4/10 of one percent of the aggregate gross receipts attributable to all goods sold by the wholesaler within this State."

■ "Sold within this State" is not expressly defined; it is therefore permissible to look to related statutes[2] and principles of statutory construction to determine its meaning.

The Corporation Income Tax, 30 *Del.C.,* Chapter 19, employs the concept of "gross receipts" in its apportionment formula. That statute provides: Gross receipts from sales of tangible personal property physically delivered within this State to the purchaser or his agent (but not including delivery to the United States mail or to a common or contract carrier for shipment to a place outside this State).... 30 *Del.C.* § 1903(b)(6)(c).[3]

This section does not include the language "sold within this State" nor does it seek to define such language. It does not say as appellant contends that goods delivered to common or contract carrier for delivery outside the State are *not* sold within the State. It is only saying that such goods will not be included in "gross receipts" in applying the income tax apportionment formula.

■ Another principle of statutory construction is "whenever the Legislature enacts a provision it is presumed to have had in mind the previous statutes relating to the same subject matter." *Getty Refining and Marketing Co. v. Leavy,* Del.Super., 438 A.2d 1236, 1238 (1981). The Legislature with the previous statute, 30 *Del.C.* § 1903(b)(6)(c), in mind, enacted 30 *Del.C.* § 2902(c) without the limiting language relating to delivery to a common carrier. This purposeful omission is a clear indication that the Legislature did not intend to limit the later statute in the same manner as it did the income tax.[4]

■ There are other principles of statutory construction that can be used to determine what the Legislature intended by "sold within this State." When a revenue statute, like any other statute does not define its terms, it is proper to refer to common law. *Wilmington Suburban Water Corp. v. Board of Assessment,* Del.Super., 291 A.2d 293 (1972). The common law definition of a sale is the passage of title

1. There is no substantial dispute as to the facts of this case. In essence, the parties stipulated to the essential facts and argued the case as a legal dispute to the Board.

2. The rule is that all consistent statutes which can stand together, though enacted at different dates, relating to the same subject, are treated prospectively and construed together as though they constituted one act. *DuPont v. Mills,* Del.Supr., 39 Del. 42, 196 A. 168, 177 (1937).

3. Subsequent to the decision of the Tax Appeal Board, 30 *Del.C.* Chapter 29 has been amended to provide the same exemption from its definition of gross receipts. Therefore, the decision of the Court is limited to the pre-amendment period.

4. Indeed, in the 1984 amendment adopting the exclusion of sales delivered to common carriers and the U.S. Mail from gross receipts tax for wholesalers, the General Assembly specifically noted that it was changing the present law:

This act amends the definition of "gross receipts" applicable to *wholesalers* to provide for a "destination" test, rather than the present "passage of title" test, in determining taxable gross receipts from sales of tangible personal property within this State for license tax purposes. House Bill 686, 132nd General Assembly, Synopsis, p. 2 (signed into law July 17, 1984 as 64 Del. Laws, c. 374).

Thus, it is clear that the General Assembly in 1984 was of the opinion that its prior enactment of the Gross Receipts Tax Legislation in 1969 created a "passage of title" test as decided by the Tax Appeal Board in this case. While not dispositive of the issue, the legislative history lends support to the interpretation placed on this statute by the Tax Appeal Board.

for money or consideration. *In Re Pennsylvania Distributing Corp.*, 11 N.Y.S.2d 718, 256 App.Div. 781 (1939); *Benner v. Tacony Athletic Ass'n.*, 328 Pa. 577, 196 A.390 (1938). The Uniform Comercial Code carries on this definition by defining "sale" as "the passing of title from the seller to the buyer for a price." 6 *Del.C.* § 2–106(1). The U.C.C. further states, "if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment...." 6 *Del.C.* § 2–401(2)(a). This section has its basis in the Uniform Sales Act. See U.C.C. § 2–401 Official Comment (1978). And the Uniform Sales Act was "to a large extent merely declaratory of common law." 67 *Am.Jur.* 2d, Sales § 2. In addition, 6 *Del.C.* § 2–401(2)(a), can be viewed as providing statutory guidelines for the implementation of the common law definition of sale in commercial law. Either way, these definitions and/or guidelines can be used in construing the term, "sold within this State", as used in 30 *Del.C.* § 2902(c)(1). Used as such, they provide strong support to the Board's conclusion that the Legislature intended to include this category of sales within those to be taxed.

Additional support for this position is found in other states where the courts have used the Uniform Commercial Code to interpret provisions of taxing statutes. *See, Crown Iron Works Co. v. Commissioner of Taxation*, 214 N.W.2d 462 (Minn.1974); and *City of Richmond v. Petroleum Markets, Inc.*, 269 S.E.2d 389 (Va.1980).

Finally, Comment 1 to § 2–401 indicates that the draftsmen of the U.C.C. anticipated that courts would use § 2–401 in situations where the passage of title is important.

It is therefore necessary to state what a "sale" is and when title passes under this Article in case the courts deem any public regulation to incorporate the defined term of the "private" law.
U.C.C. § 2–401 Official Comment (1978).

The second issue presented by this appeal is the constitutionality of imposing the Delaware Wholesaler Gross Receipts Tax on sales made to out-of-state buyers with delivery by common carrier, F.O.B. shipping point.

■ Appellant argues that the sales in question are in interstate commerce because the physical delivery to the out-of-state buyers occurred outside the State of Delaware. Appellee does not contest this and the Court holds these sales to be in interstate commerce.

■ Any tax on interstate commerce, to be constitutional, must pass the four-prong test of *Complete Auto Transit v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). That test can be summarized as follows: The tax must (1) be "applied to an activity with a substantial nexus to the taxing state"; (2) be "fairly apportioned"; (3) "not discriminate against interstate commerce"; and (4) be "fairly related to the services provided by the State." *Id.*, 430 U.S. at 279, 97 S.Ct. at 1079. Appellant concedes that prongs (1) and (4) of the test are met. Our inquiry, therefore, is focused on the second and third prongs.

■ Turning to prong (2), it is clear the tax is " 'apportioned exactly to the activities taxed,' all of which are interstate." *Standard Pressed Steel Co. v. Washington Revenue Dept.*, 419 U.S. 560, 564, 95 S.Ct. 706, 709, 42 L.Ed.2d 719, 724 (1975). As will be discussed later, no other state can constitutionally impose the same tax on the same gross receipts. This, in itself, is strong evidence that the tax is properly apportioned. As *Amicus* states in its reply brief, prongs (2) and (3) are somewhat similar in that the basic evil to be avoided is the disadvantage to which multiple taxation would put sellers in interstate commerce as compared to sellers in local commerce.

In addition, the Supreme Court has consistently upheld the taxing of 100% of the local incidents of interstate commerce. *American Mfg. Co. v. St. Louis*, 250 U.S.

459, 39 S.Ct. 522, 63 L.Ed. 1084 (1919); *Western Livestock v. Bureau of Revenue*, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938); *Department of Treasury v. Wood Preserving Corporation*, 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 488 (1941); *Tax Commission of Utah v. Pacific Pipe Co.*, 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1963); *Washington Rev. Dept. v. Stevedoring Ass'n.*, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed. 682 (1978). Delaware is doing no more than that which the Supreme Court found constitutional in the above cases.

■ The State is taxing the privilege of doing business in Delaware measured by the gross receipts from sales made in Delaware only. Although it is on 100% of those local incidents, by taxing only local incidents, the tax is apportioned by its very nature.

As already stated, prong (3) of the *Complete Auto Transit* test (discrimination against interstate commerce) is also satisfied. In *Armco v. Hardesty*, 467 U.S. 638, 81 L.Ed.2d 540, 104 S.Ct. 2620 (1984), the court discloses it is the potential of multiple taxation that violates prong (3).

This raises the question of whether another state could constitutionally impose the same tax on the same gross receipts, i.e., a tax on the privilege of doing business within that state measured in part by the gross receipts from sales made F.O.B. Wilmington. In *Norton v. Department of Revenue*, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951), at issue was the Illinois occupation tax, which was imposed upon persons engaging in the business of selling tangible personal property at retail in Illinois. The tax was measured by gross receipts. Although the Court found the tax to be constitutional as it applied to a Massachusetts corporation for a majority of their sales, the Court had the following to say about those sales made F.O.B. Worcester, Massachusetts directly to a customer in Illinois:

The only items that are so clearly interstate in character that the State could not reasonably attribute their proceeds to the local business are orders sent directly to Worcester by the customer and shipped directly to the customer from Worcester. Income from those we think was not subject to this tax. *Id.* 340 U.S. at 539, 71 S.Ct. at 381.

This decision would prohibit a state of destination from using sales made F.O.B. Wilmington in the measure of their gross receipts tax upon a Delaware wholesaler.

While *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964) seems to lead to the opposite conclusion, it is easily distinguished. In that case the Court upheld a similar tax imposed by the state of destination, Washington, as it applied to wholesale sales made by General Motors to its retailers in Washington F.O.B. shipping point. In upholding this tax, the Court stated the burden was on General Motors to show multiple taxation and General Motors failed to make this showing. In the present case, if another state used the gross receipts of the sales F.O.B. Wilmington in the measure of a tax on appellant, multiple taxation could be clearly established. In addition, *Armco* makes it clear that multiple taxation no longer needs to be proved. Therefore, *General Motors* is not authority for the constitutionality of a gross receipts tax imposed by another state on the sales made F.O.B. Wilmington.

In an analogous situation, the United States Supreme Court found that a sales tax imposed by Arkansas on sales made by a Tennessee corporation, where title passed in Tennessee upon delivery to a carrier, violated the commerce clause, even though Arkansas was the state of destination. *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944).

■ These cases make it clear that another state could not constitutionally impose a tax on the privilege of doing business in that state measured in part by the gross receipts from the sales sent F.O.B. shipping point. Therefore, there is no dan-

ger of multiple taxation and prong (3) of the *Complete Auto Transit* test is met.

In addition, the constitutionality of the tax in question can be seen in cases where the Supreme Court has upheld taxes imposed by a state of shipping. In *International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944), the Court stated,

> Here ... delivery of the goods in Indiana is an adequate taxable event....

> \*　\*　\*　\*　\*　\*

> The Wood Preserving Corp. case indicates that it is immaterial to the present issue that the goods are to be transported out of Indiana immediately on delivery. *Id.* 322 U.S. at 345, 64 S.Ct. at 1021.

At issue in *International Harvester* as in the present case, was a gross receipts tax.

In *State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co.*, 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1963), at issue was a sales tax as it applied to sales made to out-of-state customers with title passing in Utah. Despite the certainty of interstate shipment, the Court upheld the tax saying,

> We reverse ... on the authority of *International Harvester* ... which holds on facts close to those of this case that a State may levy and collect a sales tax, since the passage of title and delivery to the purchaser took place within the State. *Id.* 372 U.S. at 605, 83 S.Ct. at 925.

For all of the above-stated reasons, the decision of the Tax Appeal Board is affirmed.

IT IS SO ORDERED.