521 So.2d 884 (1988)
WEEKS DREDGING & CONTRACTING, INC.
v.
MISSISSIPPI STATE TAX COMMISSION.
No. 57358.
Supreme Court of Mississippi.
March 2, 1988.
Hugh C. Montgomery, Jr., J. Paul Varner, Charles L. Brocato, Magruder, Montgomery, Brocato & Hosemann, Jackson, for appellant.
Bobby R. Long, James S. Pounds, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Weeks Dredging & Contracting, Inc. (Weeks) seeks a refund of $94,861.33 in taxes and interest it paid to the Mississippi State Tax Commission for use and consumption of diesel fuel purchased in Alabama. Weeks used the fuel during its dredging operation on the Tennessee-Tombigbee Waterway.
Weeks paid the assessment, then filed suit in Hinds County Chancery Court after an unfavorable ruling by the full Commission. The chancellor heard the trial on numerous stipulations and other evidence on September 12, 1985. On March 17, 1986, the chancellor rendered an opinion *885 and entered judgment denying Weeks a refund.
Weeks appeals, assigning four errors:
I. THE CHANCERY COURT ERRED IN DETERMINING THAT THE UNAMBIGUOUS LANGUAGE OF SECTION 27-67-7 OF THE MISSISSIPPI CODE OF 1972 DOES NOT APPLY TO PROVIDE A CREDIT FOR THE SALES TAX PAID BY APPELLANT TO ALABAMA.
II. THE CHANCERY COURT ERRED IN DETERMINING THAT THE SALES OF FUEL TO APPELLANT WERE NOT COMPLETED IN ALABAMA.
III. THE CHANCERY COURT ERRED IN DETERMINING THAT THE ALABAMA SALES TAX WAS IMPROPERLY IMPOSED AND COLLECTED BY ALABAMA.
IV. THE CHANCERY COURT ERRED IN DETERMINING THAT THE REFUSAL BY APPELLEES TO ALLOW APPELLANT A CREDIT FOR THE SALES TAX PAID TO ALABAMA DID NOT RESULT IN AN UNCONSTITUTIONAL BURDEN AGAINST INTERSTATE COMMERCE.
Finding that the chancellor committed no reversible error, we affirm.

I.

FACTS
Weeks is a New Jersey corporation with its principal office in Cranford, New Jersey, qualified to do business in Mississippi. October 25, 1980, through September 30, 1982, Weeks performed dredging work for construction of the Tennessee-Tombigbee Waterway in northeast Mississippi. During this period Weeks ordered diesel fuel from its field office in Columbus, Mississippi, to complete its contract.
Several times Weeks ordered fuel from Chevron, USA, Inc., by calling Chevron's California office. Chevron produced fuel at its refinery in Pascagoula, Mississippi, and subsequently stored it for distribution in Moundville, Alabama. After it received Weeks' orders, Weeks would prepare and mail a purchase order to the terminal and also issue a purchase order directly to a common carrier indicating pickup and delivery points. Chevron notified the carrier when it could make pickups.
All fuel purchase orders listed terms as F.O.B., Moundville, Alabama. Chevron did not pay the common carrier or provide delivery.
The common carrier would prepare a bill of lading identifying Chevron as the shipper, identifying Weeks as the consignee, and giving a Mississippi destination. Spaces for the shipper's signature on the bills of lading were left blank or marked refused.
At the Chevron terminal the common carrier would receive a combination delivery receipt and "Original Invoice" when Chevron released fuel to it. Weeks would pay Chevron according to this invoice, and also would pay the carrier's shipment charges.
Chevron collected Alabama state and local sales taxes on the purchases at a rate of 4% for state sales tax and 2% for local sales tax. These taxes were clearly shown on the invoices as separate items, and Chevron paid these collections to the State of Alabama.
July 3, 1983, the Mississippi State Tax Commission notified Weeks by letter of a $74,312.55 use tax assessment, with interest of $15,346.90, making a total deficiency of $89,659.45. The assessment covered consumption of diesel fuel in Mississippi. Weeks proceeded to seek administrative relief from what it viewed as an improper assessment. Concurrently, on August 8, 1983, Weeks and Chevron filed with the Alabama Department of Revenue a joint petition for a tax refund. This petition was denied November 23, 1983. The record does not reflect that Weeks or Chevron ever appealed this decision. There was no stipulation to the total amount of tax paid to Alabama.
*886 The Mississippi assessment was appealed to the Board of Review pursuant to Miss. Code Ann. § 27-67-23 on July 27, 1983, and the assessment was upheld by a Board order dated August 9, 1983. Weeks filed an appeal of the Board of Review's determination to the entire Commission pursuant to § 27-67-23. The Commission affirmed the assessment November 30, 1983, and tacked on interest totalling $5,201.88, for a total deficiency of $94,861.33. Weeks paid this amount on February 8, 1984, and began this refund suit on June 26, 1984.
The suit came on for hearing September 12, 1985. The only live testimony the chancellor heard came from Ed Chamblee, director of the State Tax Commission Revenue Bureau. He testified that a tax credit pursuant to Miss. Code Ann. § 27-67-7 was not given because in Mississippi a similar sale would have been exempt from the state sales tax and, thus, the Alabama tax was not properly collected. It has been the Tax Commission's position, for as long as Chamblee could remember, that had the sale occurred here and an exemption been allowed under Mississippi law, then a tax credit is not allowed. Chamblee also stated that to his knowledge the Commission has never given tax credit for paying local taxes in other states.
The chancellor rendered an opinion, which he incorporated by reference into his decree, stating that the Alabama sales tax paid by Weeks was a burden on interstate commerce, that the Commission was justified in determining that these taxes were improper, and, thus, Mississippi's use tax should be imposed without giving Weeks credit. The court's judgment affirming the assessment and interest reflected this opinion.
From this judgment Weeks has timely perfected this appeal.

II.

Did the Court Err in Failing to Find that Miss. Code Ann. § 
27-67-7 Unambiguously Provides for a Tax Credit?
At issue is the proper interpretation of Miss. Code Ann. § 27-67-7 (Supp. 1987), which provides that a use tax will not be collected
(a) On the use, storage or consumption of any tangible personal property if the sale thereof has already been included in the measure of this tax or the tax imposed by sections 27-65-17, 27-65-19 or 27-65-25, Mississippi Code of 1972, or has already been included in the measure of a sales tax imposed by another state in which the property was sold or use tax imposed by some other state in which the property was used. ... [emphasis added]
Weeks agrees this is an exemption provision and that exemption provisions are to be strictly construed against the taxpayer. Crosby v. Barr, 198 So.2d 571, 573 (Miss. 1967); Interstate Oil Pipe Line Co. v. Stone, 203 Miss. 715, 728, 35 So.2d 73, 77 (1948).
Weeks argues, however, that this rule of construction comes into play only when a statute is ambiguous. Pinkton v. State, 481 So.2d 306, 309 (Miss. 1985); Barr, 198 So.2d at 573. This Court generally will not construe plain and unambiguous statutes. See Clark v. State ex rel Mississippi State Medical Association, 381 So.2d 1046, 1048 (Miss. 1980); Forman v. Carter, 269 So.2d 865, 868 (Miss. 1972); State v. Heard, 246 Miss. 774, 151 So.2d 417, 420 (1963); Yerger v. State, 91 Miss. 802, 822, 45 So. 849, 853 (1908). Weeks places great reliance on First National Bank of Memphis v. State Tax Commission, 210 Miss. 590, 599, 49 So.2d 410, 412 (1950), where it is said:
The Courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be entrenching upon the power of the Legislature. Neither have the Courts authority to write into the statute something which the Legislature did not itself write therein... .
* * * * * *
No principle is more firmly established or rests upon more secure foundations, than the rules which declare when a law is plain and unambiguous, whether it be expressed in general or limited terms, *887 that the Legislature shall be deemed to have intended to mean what they have plainly expressed, and, consequently, no room is left for construction in the application of such law.
Id. 49 So.2d at 412. See also Pinkton v. State, 481 So.2d 306, 309 (Miss. 1985).
Since the transfer of the fuel to Weeks "has already been included in the measure of a sales tax imposed by another state ...," under the plain words of the statute the consumption of the fuel is exempt from the Mississippi use tax, Weeks argues.
The question, then, is whether the phrase "included in the measure of a sales tax imposed by another state" is sufficiently ambiguous that some statutory construction is necessary. We think that it is. It does not take much imagination to visualize similar situations to which we cannot apply this phrase without some construction. For example, how should this Court decide a case where a like tax is initially imposed in another state, collected and then refunded on appeal as improperly imposed. Thus, the time at which at tax is "imposed" according to the statute contemplates an ambiguity.
Impose means: "to levy or exact by authority; to lay as a burden, tax duty or charge." Black's Law Dictionary 680 (5th ed. 1979). Thus, imposed fairly implies taxation by authority. Since impose usually means to levy by authority, the plain words seem to require that a credit be given only for sales taxes levied by another state which has the authority to impose such a tax.
Thus, even by its plain words the statute fairly implies a requirement that the tax paid in another state be properly imposed. Otherwise, Weeks could pay even the most patently improper tax assessments in another state, gain an exemption in Mississippi, then gain a refund in the taxing state. Weeks thus advocates we provide a vehicle to potentially insulate it from all tax liability for this type of transaction. This is not a reasonable interpretation of the statute. We think the statute contemplates that "a sales tax imposed in another state" means a tax properly imposed, and thus some review of the Alabama sales tax is in order.
We are not alone in so interpreting the exemption provision. Other courts have found like restrictions in similar tax provisions. See Vermillion Parish School Board v. Weaver Exploration Co., 474 So.2d 1032, 1035 (La. Ct. App. 1985); Terrebonne Parish Sales and Use Tax Dept. v. Callais Cablevision, Inc., 433 So.2d 820, 823 (La. Ct. App. 1983); Allied Steel Co. v. Larey, 246 Ark. 1009, 440 S.W.2d 567 (1969); Green v. Railway Express Agency, Inc., 96 So.2d 790 (Fla. 1957); Whitmore Oxygen Co. v. Utah State Tax Commission, 114 Utah 1, 196 P.2d 976 (1948); compare McElrath Poultry Co., Inc. v. State Dept. of Revenue, 332 So.2d 383 (Ala. Ct. App. 1976); see generally Annot. 31 A.L.R.4th 1206 (1984).
The chancellor correctly considered whether Alabama improperly imposed its sales tax.

III.

Did the Chancellor Err in Holding that the Alabama Tax was Improper?
In his opinion, the chancellor gave these reasons for denying a refund based on a credit for Alabama sales tax paid:
It appears to me that this was a clear interference with interstate commerce. It added a burden upon interstate commerce which is forbidden and does not come under the exceptions as I understand the [Complete Auto Transit Co. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977)] case and others cited by the Petitioner.
Under these circumstances I do believe that the State Tax Commission of Mississippi was justified in determining that the taxes imposed in Alabama were taxes by a sister state, that they were improperly imposed on goods in interstate commerce, and that Mississippi had the right and the Tax Commission had the duty to impose use under the Mississippi law, as it did do.
Here Weeks argues that the Alabama tax was proper under Alabama law and *888 consistent with constitutional interstate commerce analysis.
Alabama continues to adhere to the rule that sales tax may be imposed on sales "closed" within Alabama. Oxmoor Press, Inc. v. State, 500 So.2d 1098, 1100 (Ala. Ct. App. 1986); American Cast Iron Pipe Co. v. Boxwell, 350 So.2d 438 (Ala. 1977). A transaction is "closed" when title passes, which is usually the time of performance. Oxmoor Press, 500 So.2d at 1100.
Weeks points to the Alabama version of the Uniform Commercial Code, § 7-2-401(2), which provides that title passes upon shipment when the seller does not engage to deliver at a destination.
Ala. Code Ann. §§ 40-23-1  38 set forth that state's sales tax provisions. Section 40-23-1(a)(5) arguably supports Weeks' contention. Prior to a 1986 amendment it defined "sales" as
Installment and credit sales and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale.
Neither party cites a case under this statute where an Alabama Court upheld imposition of a sales tax on transactions involving shipments out of state by the use of common carriers. On the other hand, the Alabama Department of Revenue's own regulations forbade them from taxing this transaction, though it apparently was interpreted differently by the Alabama department in this case.
Rule 114-012 states:
Interstate commerce, sales in. Sales are in interstate commerce and cannot be taxed by the Alabama Sales tax law where:
* * * * * *
(2) The seller is required by the sales agreement to deliver the goods to a common carrier or to the United States Post Office for transportation outside the state at the seller's direction either f.o.b. point of origin or f.o.b. point of destination, or. .. .
Since Weeks paid the Alabama tax, the Alabama sales tax provision has been amended to specifically state that for purposes of deciding where title has passed a common carrier or the United States Postal Service are considered the agents of the seller. 1986 Ala. Acts 86-536. The revised statute defines "sales" thusly:
Installment and credit sales and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale. Provided, however, a transaction shall not be closed or a sale completed until the time and place when and where title is transferred by the seller or seller's agent to the purchaser or purchaser's agent, and for the purpose of determining transfer of title, a common carrier or the U.S. Postal Service shall be deemed to be the agent of the seller, regardless of any F.O.B. point and regardless of who selects the method of transportation, and regardless of by whom or the method by which freight, postage or other transportation charge is paid. Provided further that, where billed as a separate item to and paid by the purchaser, the freight, postage or other transportation charge paid to a common carrier or the U.S. Postal Service is not a part of the selling price.
(emphasis added) Thus, under the enforcing department's own regulations, and by subsequent statutory amendment, Alabama has made clear that the transaction in question would not be subject to sales tax in Alabama.
Weeks argues the statutory amendment should not be applied retroactively, but this ignores the Alabama Department of Revenue's own regulations, making this transaction non-taxable.
Generally, courts have held that administrative agencies are not free to violate their own regulations when a party would be deprived of a substantive benefit or exemption. See Note, Violations by Agencies by Their Own Regulations, 87 Harv.L.Rev. 629-655 (1973-74). This proposition dates from the United States Supreme Court's decision in Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932). The general rule has been watered down in *889 some respects, see Note, 87 Harv.L.Rev. 629-655, supra, but there is nothing remotely suggesting a reasonable basis for the Alabama Department of Revenue to alter or qualify its rule in this case. Nor would any such alteration seem rational in light of the amendment to Ala. Code Ann. 40-23-1(a)(5). The amendment uses somewhat different language than the regulation; however, the amendment in effect endorses the interpretation expressed in the department's regulations. Contrary to Weeks' contention, then, the statutory amendment did not represent a change from prior Alabama law. The statutory amendment merely codified what had previously been an Alabama regulation.
Weeks never appealed the Alabama Department of Revenue's obviously contradictory administrative determination. A favorable resolution may well have followed.
The chancellor found that the tax was an impermissible burden on interstate commerce. Since we find that the Alabama tax was improper under the facts in this case, the chancellor was correct in finding an impermissible interference with interstate commerce.

IV.

Was the Chancellor Correct in Finding the Alabama Sales Tax to be an Improper Burden on Interstate Commerce?
Eschewing prior precedent, the United States Supreme Court in Complete Auto Transit Co. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), held that commerce clause analysis should be based on the practical effects of a challenged state tax.
The Court stated that for a tax to withstand commerce clause challenge it must satisfy the following test: (1) the tax must be applied to an activity with a substantial nexus with the taxing state; (2) it must be fairly apportioned; (3) it must not discriminate against interstate commerce, and (4) it must be fairly related to the services provided by the state. Id. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331.
This Court recently applied the Complete Auto Transit test in Marx v. Truck Renting and Leasing Association, 520 So.2d 1333 (Miss. 1987). In TRLA this Court upheld a chancellor's determination that the state gross income tax failed to meet the four-prong test as applied to truck leasing companies which only routed trucks through the state.
In TRLA this Court held the tax failed the first prong: the companies' businesses did not have a "substantial" connection to the taxing state. TRLA, at 1342-1343.
We think the Alabama tax also fails to meet the "substantial nexus" prong.
The record is clear that the fuel was produced in Mississippi  not Alabama, the sale was initially negotiated outside Alabama, and under Alabama law the sale should have been considered a non-taxable event. Chevron merely stored the fuel in Alabama, apparently for a period not exceeding two weeks. As noted under Part II, Alabama does not consider delivery to a common carrier to be a taxable event. Under these facts even Alabama acknowledges the mere changing of possession in Alabama does not create a substantial nexus. The first prong of the Complete Auto Transit test does not appear to be met. See TRLA, at 1342-1343.
Weeks cites Franklin Fibre-Lamitex v. Director of Revenue, 505 A.2d 1296 (Del. Super. Ct. 1985), aff'd, 511 A.2d 385 (1986), as supporting its argument that the Complete Auto Transit test is met. In Franklin the Delaware court dealt with a state tax on gross receipts including sales accomplished by shipment from a location in Delaware through common carriers to out-of-state buyers. The court interpreted the gross receipts tax to apply to goods, the passage of title to which occurred within the state. Id. at 1298-99. The court there interpreted the passage of title to be determined by reference to the local version of the Uniform Commercial Code, in the absence of a more specific statutory directive, which provided that title to goods passed where shipped. Id. The Delaware court *890 found the tax met the Complete Auto Transit test. The Franklin Fibre-Lamitex case is distinguishable since here Alabama did express its intent, through approval of the Department of Revenue regulations, that this transaction was not to be considered "closed" within Alabama. Also, unlike the Delaware case, here the sale originated outside the taxing state covering goods not originally produced within the taxing state. The Court in Franklin Fibre-Lamitex faced facts establishing a much greater nexus with Delaware compared with Alabama's nexus with Weeks and Chevron.
The failure to meet one prong renders the tax invalid, TRLA, at 1343, but Alabama's tax may fail the third prong, as well. For example, if the sale of fuel to Weeks had been negotiated in Mississippi, for fuel produced in Mississippi, and if, as testimony established, Mississippi defines a closed transaction as not including placing property in the hands of common carrier, Mississippi might persuasively argue that delivery in Mississippi closes the transaction here, and, thus, subjects this transaction to Mississippi sales tax.
If Alabama held that the same transaction was closed in that state because it was where the common carrier took possession, then conceivably both Mississippi and Alabama could tax the same sale by virtue of their incongruous definitions of a closed transaction.
By definition, then, Mississippi and another state arguably would be taxing only local incidents, though both would be taxing the same event, thus discriminating against the out-of-state buyer.

V.

Did Refusal by the Trial Court to Allow Credit Constitute an Unconstitutional Discrimination on Interstate Commerce?
Here Weeks argues that failure to allow a credit under Miss. Code Ann. § 27-67-7 (Supp. 1987) amounts to multiple taxation on the same transaction. We disagree.
As we held under Point II, Miss. Code Ann. § 27-67-7 does provide for a credit where the sales tax in another state is properly imposed. We do not think Weeks can complain of multiple burdens when, in effect, it voluntarily paid an improper tax. Under the Mississippi use tax, Weeks is protected when it pays a properly assessed sales tax for purchases out of state. It is only when the out-of-state tax is not properly imposed that Mississippi will provide no credit.
For the reasons stated above, we find no reversible error in the record as submitted from the Chancery Court of Hinds County. Accordingly, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.