705 So.2d 195 (1997)
J. RAY McDERMOTT, INC. formerly OPI International, Inc.
v.
Ben MORRISON, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. 96 CA 2337.
Court of Appeal of Louisiana, First Circuit.
November 7, 1997.
Writ Denied February 13, 1998.
*198 Bruce J. Oreck, Jesse R. Adams, Jr., and Anne Derbes Keller, New Orleans, for Plaintiff/Appellant J. Ray McDermott, Inc., formerly OPI International, Inc.
Robert R. Rainer, Baton Rouge, for Defendant/Appellee.
Before GONZALES and PARRO, JJ., and TYSON,[1] J. Pro Tem.
GONZALES, Judge.
In this appeal, a taxpayer, J. Ray McDermott, Inc.[2] (McDermott), challenges a judgment ordering it to pay sales and use taxes assessed against it by the Louisiana Department of Revenue and Taxation (Department). In answer to the appeal, the Department challenges that part of the trial court's judgment ordering a refund of penalties paid by McDermott under protest.[3]

I. FACTS AND PROCEDURAL HISTORY
McDermott operates a fabrication business. The administrative offices for the business are located on the Texas side of the Sabine River in Orange, Texas. The actual fabrication yard is located on Harbor Island, an island owned by McDermott, which is in the Sabine River and located in Calcasieu Parish, Louisiana. The only access to the fabrication yard is by bridge from the Texas side of the river to the island.
Beginning in 1993, the Department conducted a sales and use tax audit of McDermott for the periods December 1, 1989 through December 31, 1992, and January 1, 1993 through January 31, 1995. The audit revealed that, during the relevant periods, McDermott paid Texas sales tax to vendors from whom it purchased tangible personal property, whether that property was used or consumed at its administrative offices on the Texas side of the border, or at its fabrication yard on the Louisiana side of the border. According to the record, Texas sales tax was charged by vendors because the address provided to vendors by McDermott for all deliveries, whether intended for the administrative offices or for the fabrication yard, was 96 West Front Street, Orange, Texas. Thus, vendors used the Texas address as the basis for charging Texas taxes.
As a result of the audit, on September 7, 1994, the Department issued a "Notice of Tax Due" to McDermott, seeking sales and use tax, interest, and penalties for the period December 1, 1989 through December 31, 1992. McDermott paid $927,559.50 ($495,025.22 in tax, $308,777.91 in interest, and $123,756.37 in penalties) to the Department, under protest.
On September 26, 1995, McDermott filed suit against the Department,[4] seeking a refund of the payment it made under protest. The Department filed a reconventional demand, seeking additional taxes ($40,343.75) for the period of January 1, 1993 through January 31, 1995; statutory interest through January 20, 1996 ($13,294.77); delinquency penalties through January 20, 1996 ($6,798.50); and future interest continuing to accrue from January 21, 1996 until paid. The Department filed a motion for partial summary judgment and McDermott filed a cross motion for summary judgment. By judgment dated July 8, 1996, the trial court *199 (1) granted the Department's motion and made an award in its favor for the taxes and interest at issue,[5] (2) denied the Department's motion regarding an award of penalties, and ordered the Department to issue a refund to McDermott for penalties paid under protest, and (3) denied McDermott's cross motion for summary judgment.
McDermott appeals from the adverse judgment, contending that the trial court erred in granting the Department's motion for summary judgment. The Department answers the appeal, contending that the trial court erred in ordering a refund of the penalties and interest thereon paid by McDermott.

II. PRELIMINARY MATTERS
Before addressing the merits of this appeal, we address two preliminary matters: a motion to remand filed by McDermott and a motion to strike filed by the Department. This court previously referred both motions to the merits of the case.

A. McDermott's Motion To Remand
After this appeal was filed, McDermott filed a motion to remand the case for the introduction of new evidence. The Department filed an opposition to the motion.
Under La.C.C.P. art. 2164, courts of appeal have the power to remand a case for the introduction of additional evidence if grave injustice might result from failure to do so. Our Lady of the Lake Hospital, Inc. v. Carboline Company, 632 So.2d 339, 343 (La.App. 1st Cir.1993), writs denied, 94-0287 (La.3/25/94), 635 So.2d 228 and 94-0753 (La.5/6/94), 637 So.2d 1052. A remand for the introduction of additional evidence is warranted only when the new evidence is likely to affect the outcome of the case. White v. West Carroll Hospital, Inc., 613 So.2d 150, 154 (La.1992); Our Lady of the Lake Hospital, Inc. v. Carboline Company, 632 So.2d at 343. Although discretionary, the power to remand on this basis should be exercised sparingly. Herbert v. Travelers Indemnity Co., 255 La. 645, 232 So.2d 463, 465 (1970); Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir. 11/9/95), 665 So.2d 422, 430.
The first item McDermott wants introduced into the record on remand is a legislative amendment to La. R.S. 33:2718.2, which occurred after the trial court ruled in this case. The statute provides for the credit due a taxpayer by a political subdivision of this state when the political subdivision seeks to impose a tax on property for which the taxpayer has already paid sales and use tax in another political subdivision of this state, or in a political subdivision of another state. La. R.S. 33:2718.2(A).[6] The amendment adds a section to the statute which defines the "taxpayer" who is entitled to the credit as including both the final consumer who has paid the local tax directly to the political subdivision and the vendor or seller who has collected the tax from the final consumer and remitted it to the political subdivision.[7]
*200 McDermott contends that La. R.S. 33:2718.2 was amended to clarify that all taxpayers, whether final consumers or vendors, are entitled to receive a credit for erroneously paid taxes. Because, in this case, McDermott is claiming entitlement to a credit from Louisiana for taxes it paid to Texas, McDermott argues that the amendment to La. R.S. 33:2718.2 significantly impacts the issues of this case and should be considered by the trial court on remand.
We first point out that a change in the law during the pendency of a suit does not necessarily require a remand. When the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, 725, cert. denied sub. nom, Allstate Insurance Company v. Louisiana Insurance Guaranty Association, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). In this case, we need not decide whether a retroactive application of the amendment to La. R.S. 33:2718.2 is permissible, because we conclude that the statute is not applicable to this case.
As pointed out by the Department in its opposition to the motion to remand, La. R.S. 33:2718.2 specifically applies to taxation by political subdivisions of the state, and not to taxation at the state level, as is the case herein. The credit McDermott claims is indisputably governed by the terms of La. R.S. 47:303(A)(3),[8] which addresses use tax credits available from the state. Therefore, a legislative amendment to La. R.S. 33:2718.2, which deals with use tax credits available from political subdivisions, has no impact on the interpretation of La. R.S. 47:303(A) and does not justify a remand.
The second item McDermott wants introduced into the record on remand is a policy and procedure memorandum issued by the Secretary of the Department on November 27, 1996 (over 4 months after judgment was signed in this case), which outlines the Department's philosophy on general tax administration and on use tax administration. McDermott argues that the memorandum sets forth the Department's philosophy that taxpayers should bear the burden of a sales or use tax only once, and that the Department's position in the present case is contrary to the Department's philosophy as set forth in the memorandum. According to McDermott, "grave injustice" will result from this court's refusal to remand this matter for introduction of the memorandum.
The purpose of a state sales/use tax scheme is to make all tangible property sold or used subject to a uniform tax burden, regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax. The complementary taxes must be non-discriminatory in effect, imposing an equal burden on use or sale. Pensacola Construction Company v. McNamara, 558 So.2d 231, 233 (La.1990). Thus, inherent in a sales/use tax scheme is the basic notion that, in order for sales and use taxes to be valid, they must achieve uniformity and equality. In other words, a sales/use tax scheme is not designed to require that a taxpayer bear the burden of duplicative taxation. The Department's policy and procedure memorandum is no more than a reiteration and elaboration of these basic principles underlying sales and use taxation, and these principles existed long before the memorandum was issued by the Secretary of the Department. Therefore, because the memorandum contains no new departmental policy regarding the administration of sales and use taxes, but only a clarification of pre-existing policy, we fail to see how the introduction of the memorandum into evidence is likely to affect the outcome of this case or how its exclusion will create a grave injustice.
*201 For the foregoing reasons, McDermott's motion to remand is denied.

B. THE DEPARTMENT'S MOTION TO STRIKE
We next address a motion to strike filed in this court by the Department, seeking to have portions of McDermott's original appeal brief stricken from the record for failure to comply with court rules. In support of its motion, the Department makes the following contentions: (1) McDermott's brief refers to two deposition excerpts and a memorandum issued by the Secretary of the Department that are not part of the record on appeal, in violation of Rule 2-12.4 of the Uniform Rules of Louisiana Courts of Appeal (Uniform Rules); (2) McDermott failed to attach a copy of the trial court's oral reasons for judgment to its appeal brief in violation of Rule 2-12.4 of the Uniform Rules; and (3) McDermott's brief does not state the docket number of the case in violation of Rule 2-12.3(b) of the Uniform Rules.
Under Rule 2-12.13 of the Uniform Rules, this court has the power to strike, in whole or in part, briefs which are not in compliance with the Uniform Rules.[9] Further, by this court's order dated August 24, 1995, appellate briefs shall have attached thereto only a copy of the judgment, order, or ruling complained of, and a copy of either the trial court's written reasons for judgment, transcribed oral reasons for judgment, or minute entry of the reasons, if given, unless, for good cause shown on written motion, permission for other attachments is granted by the court. Otherwise, all other attachments are prohibited.
Regarding McDermott's reference to excerpts from the depositions of Raymond Tangney and Ben Morrison, we note that this evidence was stricken from the record by a trial court judgment signed August 21, 1996. Under La. C.C.P. art. 2164, an appellate court must render its judgment based on the record on appeal and cannot consider evidence that is not part of the record. Fisher v. Department of Social Services, Office of Community Services, 600 So.2d 1368, 1370 (La.App. 1st Cir.1992). Because these deposition excerpts are not part of the record on appeal, pursuant to Rule 2-12.13 of the Uniform Rules, we strike those portions of McDermott's brief which reference pages 6, 9, 14, 16, and 25 of Raymond Tangney's deposition and pages 6, 17, 24, 25, and 28 of Ben Morrison's deposition.
Regarding the Department's November 27, 1996 policy and procedure memorandum attached to McDermott's appeal brief as Exhibit B (the same memorandum discussed in connection with McDermott's motion to remand), we find that the Department's motion to strike also has merit. The appellate briefs of parties are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal. Augustus v. St. Mary Parish School Board, 95-2498 (La.App. 1st Cir. 6/28/96), 676 So.2d 1144, 1156. Therefore, pursuant to Rule 2-12.13 of the Uniform Rules, Exhibit B to McDermott's appeal brief is hereby stricken.
Regarding McDermott's failure to attach the trial court's oral reasons for judgment to its brief and its failure to note the docket number on its brief, we find that, although these deficiencies are sanctionable, they are insufficient to warrant striking McDermott's brief from the record. Thus, in this regard, the Department's motion to strike is denied.
We now turn to the merits of McDermott's appeal.

IV. SUMMARY JUDGMENT
McDermott argues that the trial court erred in granting the Department's motion for summary judgment. It is McDermott's position that it is entitled to a use tax credit from the Department for sales taxes it paid to Texas on items which were ultimately used or consumed at its fabrication yard located *202 on the Louisiana side of the border.[10] The Department argues that McDermott is not entitled to a use tax credit because the sales tax paid to Texas by McDermott was not legally owed to Texas in the first instance.
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
In the 1997 Regular Session, the Louisiana legislature amended the summary judgment law by amending and reenacting Sections C and E of La. C.C.P. art. 966 and by repealing Sections E and F of the article. 1997 La. Acts No. 483. In part, the purpose of these amendments was to clarify legislative changes made to La. C.C.P. art. 966 in 1996 (specifically, see 1996 La. Acts, 1st Ex.Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4. These burdens of proof are stated in Section C of amended La.C.C.P. art. 966, as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Section 4 of Act 483 indicates that the amendments are designed to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. In the Hayes decision, 685 So.2d at 694, the court set forth the following rules regarding the burdens of proof in a summary judgment setting:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
The Hayes court also noted that, since its amendment in 1996, La. C.C.P. art. 966 has effected a substantial change in the law of summary judgment. Under previous jurisprudence, summary judgments were not favored and were to be used only cautiously and sparingly. The pleadings and supporting documents of the movant were to be strictly scrutinized by the court, while the *203 documents of the non-movant were to be treated indulgently. Further, any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. Hayes v. Autin, 685 So.2d at 694. See also Jenson v. First Guaranty Bank, 96-0381, 96-0382, p. 3 (La.App. 1st Cir. 5/9/97), 699 So.2d 403, 404. However, under the amended version of La. C.C.P. art. 966, the jurisprudential presumption against granting summary judgment no longer exists, and effectively, the playing field between the parties is leveled in two ways: first, the supporting documents submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Hayes v. Autin, 685 So.2d at 694.
Retroactive application of the new summary judgment law is permissible because the legislative changes made were procedural in nature. La. C.C. art. 6; Berzas v. OXY USA, Inc., 29,835, p. 8 (La.App.2d Cir. 9/24/97), 699 So.2d 1149, 1152; Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 7 (La.App. 1st Cir. 6/20/97), 706 So.2d 999, 1001. Therefore, we review the present summary judgment in accordance with the rules set forth in the current version of La. C.C.P. art. 966 and with the Hayes decision. See Berzas v. OXY USA, Inc., 699 So.2d at 1152.

V. APPLICABLE SALES AND USE TAXATION LAW
Because the applicable substantive law determines the materiality of facts in a summary judgment setting, we now turn to a discussion of the sales and use taxation law applicable to this case. See Colver v. Travelers Insurance Companies, 95-1696 (La.App. 1st Cir. 11/8/96), 685 So.2d 179, 183, writ denied, 96-2928 (La.2/21/97), 688 So.2d 516.
Generally, Louisiana imposes a sales tax on the retail sale in this state of each item of tangible personal property. La. R.S. 47:302.[11] Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." La. R.S. 47:301(16)(a).[12] In addition to a sales tax, Louisiana imposes a use tax on items purchased in other states, but brought into Louisiana for use, consumption, distribution, and storage for use and consumption. La. R.S. 47:302.
A use tax ordinarily serves to complement the sales tax of a state by eliminating the incentive to make major purchases in states with lower sales taxes; it requires the resident who shops out-of-state to pay a use tax equal to the sales tax he saved by buying out-of-state. Minneapolis Star and Tribune Company v. Minnesota Commissioner of Revenue, 460 U.S. 575, 581-582, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295 (1983); 68 Am.Jur.2d, Sales and Use Tax § 188 (1993). However, to alleviate or eliminate the potential multiple taxation that results when two or more states have jurisdiction to tax parts of the same chain of commercial events, most states which impose sales and use taxes provide a credit against their own sales or use taxes for sales or use taxes paid to another state. Tyler Pipe Industries, Inc. v. Washington State Department of Revenue, 483 U.S. 232, 245 n. 13, 107 S.Ct. 2810, 2819 n. 13, 97 L.Ed.2d 199 (1987); Williams v. Vermont, 472 U.S. 14, 22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985); see Lee R. Russ, Annotation, Validity and Construction of Provisions Allowing Use Tax Credit for Tax Paid in Other State, 31 A.L.R.4th 1206 (1984) and 68 Am.Jur.2d, Sales and Use Tax § 245 (1993). Louisiana and Texas are among the states which have enacted use tax credits to balance the imposition of their use taxes against sales or use taxes imposed by other states. Both states only allow the credit against their use tax when the state where sales or use taxes were paid also allows the credit. In other words, reciprocity is required.
Louisiana's use tax credit provision is found in La. R.S. 47:303(A)(3), which provides, in pertinent part, as follows:

*204 A credit against the use tax imposed by this Chapter shall be granted to taxpayers who have paid a similar tax upon the sale or use of the same tangible personal property in another state. The credit provided herein shall be granted only in the case where the state to which a similar tax has been paid grants a similar credit as provided herein....
Texas' use tax credit provision is found in Tex. Tax Code § 151.303(c), which provides, in pertinent part, as follows:
A taxpayer is entitled to a credit against the use tax imposed by Subchapter D of this chapter on a taxable item in an amount equal to the amount of any similar tax paid by the taxpayer in another state on the sale, purchase, or use of the taxable item if the state in which the tax was paid provides a similar credit for a taxpayer of this state.
McDermott argues that it is entitled to a credit against Louisiana's use tax because it paid a "similar tax," a sales tax, to Texas. McDermott also contends that Louisiana's use tax credit provisions should be interpreted to avoid the imposition of double taxation. On the other hand, the Department argues that McDermott is not entitled to the use tax credit in Louisiana because, under Texas law, the sales taxes paid by McDermott to Texas were not owed to Texas. Referencing a Texas statute which exempts Texas purchases from sales tax when they are shipped outside of Texas, the Department argues that, because the tangible personal property at issue was shipped to McDermott's fabrication yard located in Louisiana, the purchases were exempt from Texas sales taxes under Texas law.[13] Therefore, because the sales taxes at issue were exempted by Texas, the sales taxes paid by McDermott to Texas were not owed there, and do not constitute a "similar tax" for which Louisiana is bound to give a use tax credit. In other words, according to the Department, a taxpayer's erroneous payment of sales taxes to one taxing authority negates his entitlement to a credit for use taxes from another taxing authority.
There is ample jurisprudential authority from other states to support the Department's interpretation of La. R.S. 47:303(A)(3). In Allied Steel Company v. Larey, 246 Ark. 1009, 440 S.W.2d 567 (1969), a taxpayer bought and took delivery of a crane in Tennessee, shipped it to Arkansas where it was used at a construction job, and then had it shipped to Oklahoma. Some six weeks before the crane arrived in Oklahoma, the taxpayer paid Oklahoma's use tax. Subsequently, Arkansas assessed a use tax on the crane. Allied Steel Company v. Larey, 440 S.W.2d at 568. Although an Arkansas statute provided credit for like taxes paid in another state, the Arkansas Department of Revenue denied the use tax credit claimed for the Oklahoma use tax because the Oklahoma tax was paid before the taxpayer became liable for it. After paying the Arkansas tax under protest, the taxpayer filed suit for a refund. Based on undisputed evidence that the taxpayer paid the Oklahoma use tax before the crane ever entered Oklahoma, the Arkansas court concluded that since there was no basis for the Oklahoma use tax, the taxpayer's voluntary payment to Oklahoma was not a "tax" for which the taxpayer could claim a credit. Allied Steel Company v. Larey, 440 S.W.2d at 569.
In Weeks Dredging & Contracting, Inc. v. Mississippi State Tax Commission, 521 So.2d 884 (Miss.1988), a taxpayer sought a refund of Mississippi's use tax for diesel fuel it bought and paid sales tax on in Alabama. Based on its conclusion that the Alabama sales tax had been improperly assessed, the Mississippi court concluded that Mississippi was not obligated to give the taxpayer a use tax credit. According to the court, a plain reading of the Mississippi use tax credit statute implied "a requirement *205 that the tax paid in another state be properly imposed" before a credit was due. Otherwise, the court explained, a taxpayer "could pay even the most patently improper tax assessments in another state, gain an exemption in Mississippi, then gain a refund in the taxing state." Weeks Dredging & Contracting, Inc. v. Mississippi State Tax Commission, 521 So.2d at 887.
Louisiana courts have similarly construed like statutes dealing with local government use tax credit provisions. In Terrebonne Parish Sales and Use Tax Department v. Callais Cablevision, Inc., 433 So.2d 820 (La. App. 1st Cir.1983) and Vermilion Parish School Board v. Weaver Exploration Company, 474 So.2d 1032 (La.App. 3d Cir.), writ denied, 477 So.2d 1126 (La.1985), use tax credits under statutes similar to the one at issue were denied to taxpayers because the taxes for which a credit was sought were "not legally owed" to the other taxing authorities. By comparison, in Potashnick Construction, Inc. v. Louisiana Department of Revenue and Taxation, 470 So.2d 526, 529 (La.App. 1st Cir.1985), this court found that Louisiana was required to give a use tax credit to a taxpayer when the sales taxes paid were legally due to another state. In Potashnick, the Department argued that the taxpayer was not entitled to a credit because the payment of sales taxes to the other state was incorrect. Although the court disagreed with the Department's argument, it did agree with the underlying premise that " § 303(A) authorizes a credit only for a legally owed tax paid to another state." Potashnick Construction, Inc. v. Louisiana Department of Revenue and Taxation, 470 So.2d at 529. (Emphasis added.)
Raymond E. Tangney, director of the Department's sales tax division, testified in his deposition that the Department has consistently interpreted Louisiana's tax credit provisions to require that sales taxes paid to another state be actually due under the tax laws of the other state before a use tax credit is due in Louisiana. Additionally, the Louisiana and Texas tax regulations adopted to implement each state's use tax credit statutes provide that a credit is due only when the tax paid to the other state was "imposed" (Louisiana regulation) or "legally imposed" (Texas regulation) by that state.[14]
Considerable weight should be afforded to an administrative agency's construction of a statutory scheme that it is entrusted to administer, and deference must be given to its administrative interpretations. Matter of Recovery I, Inc., 93-0441 (La.App. 1st Cir. 4/8/94), 635 So.2d 690, 696, writ denied, 94-1232 (La.7/1/94), 639 So.2d 1169; United States Gypsum Company v. Green, 110 So.2d 409, 414 (Fla.1959). In light of the deference due to the Department's interpretation of the statute, as well as the jurisprudential authority for such an interpretation, we conclude that a proper reading of La. R.S. 47:303(A)(3) requires that a credit against the Louisiana use tax be given only when a similar tax which is legally owed to another state has been paid by the taxpayer seeking the use tax credit.
McDermott argues that this interpretation of La. R.S. 47:303(A)(3) results in double taxation which is contrary to the basic notion that a sales/use tax scheme should impose an equal tax burden on use or sale, not multiple taxation. We agree with the general premise that use tax statutes should be construed to avoid double taxation. See 68 Am.Jur.2d, Sales and Use Tax § 215 (1993). However, according to representations made in brief and at oral argument, the reason McDermott is now subject to a duplicative tax bill is because its claims for refund of the Texas sales taxes are prescribed under Texas law. Had timely requests for refunds *206 of the erroneously paid taxes been sought from the Texas tax authorities, no duplication of taxes would have occurred.
Although we agree with the Department's interpretation of La.R.S. 47:303(A)(3), in order to prove that McDermott was not entitled to a use tax credit from Louisiana, the Department, as the movant for summary judgment, had the burden of showing that the sales taxes paid by McDermott to Texas were not legally owed. To carry this burden, the Department had to show that the property at issue was shipped to McDermott outside of Texas, exempting it from Texas sales tax. See La. C.C.P. art. 966(C)(2). Under the current summary judgment law, if the Department made a prima facie showing that shipment was made to Louisiana, the burden then shifted to McDermott to present evidence demonstrating a factual dispute regarding whether or not shipment was made to Louisiana. Hayes v. Autin, 685 So.2d at 694.
There are documents in the record showing that the property at issue was delivered in Louisiana.[15] For example, the record contains a form letter apparently used by McDermott in its attempt to obtain refunds from the vendors to whom it paid Texas sales tax. The first paragraph of the form letters reads:
Dear Sir/Madam:
This letter serves as a request for a refund of Texas sales tax which we inadvertently paid to you. The State of Louisiana has completed a review of our purchases and determined that Texas tax was incorrectly paid on the invoices listed on the attached schedule. The enclosed [schedule lists] invoices on which Louisiana tax was due. The items were delivered to our fabrication yard in Calcasieu Parish, Louisiana. (Emphasis added.)
A second form letter contained in the record contains a similar paragraph, which reads, in pertinent part:
Dear Vendor:
This letter serves as a request [for a refund] of Texas sales tax for the items we purchased from you that were shipped to Louisiana. Our fabrication yard has a mailing address of Orange, Texas. Most deliveries are made to Harbor Island, Louisiana. The only access to this island is a bridge on the Texas side of the Sabine River. (Emphasis added.)
In a letter to Texas tax authorities seeking permission to issue exemption certificates for island deliveries, McDermott's accountant states:
[McDermott] operates a fabrication yard on Harbor Island, Calcasieu Parish, Louisiana. The only motor vehicle access to this island is via a bridge from the Texas side of the Sabine River. The delivery address for island deliveries is 96 West Front Street, Orange, Texas. There are also administrative offices located in Orange.
Almost all purchases for this facility are delivered to the island. Separate accounting records are maintained for purchases for the administrative facilities....
In a form submitted to the Department seeking a waiver of the penalty associated with delinquent taxes, McDermott's director of taxes states:
[McDermott's] manufacturing facilities are located on an island that lies on the Texas-Louisiana border. The island itself is located on the Louisiana side of the border, while [McDermott's] administration building is located on the Texas side. [McDermott's] facilities on the island [has] no delivery address. The administration building's address, 96 W. Front St., Orange, Texas, was given to vendors in order to facilitate the [vendors'] deliveries. The vendors, relying on this delivery address, incorrectly charged Texas sales tax on items delivered to the facilities on the island. ... (Emphasis added.)
We conclude that these documents sufficiently meet the Department's burden of showing that delivery of the items *207 in question was made in Louisiana. We further conclude that McDermott has failed to produce evidence demonstrating a factual dispute regarding the site of delivery. At oral argument, McDermott's counsel argued that all deliveries to McDermott were made in Texas, because the only access to McDermott's facility is on the Texas side of the border. Although it is undisputed that McDermott only has one delivery address, namely, 96 West Front Street, Orange, Texas, this fact does not present a factual dispute as to the site of delivery. An address referenced on a purchase order or order form does not necessarily indicate that the actual delivery will occur at the address listed. Although all vendors may have arrived at McDermott's entrance on the Texas side of the border, McDermott failed to present evidence demonstrating that all deliveries stopped at the gate. To the contrary, the record establishes that deliveries intended for the fabrication yard on Harbor Island were actually made to the fabrication yard. There is no evidence to refute this fact.
For the above reasons, we conclude that the Department met its burden of proving that McDermott is not entitled to a use tax credit from Louisiana for sales taxes paid to Texas. The sales taxes paid were not legally owed to Texas because the items at issue were delivered in Louisiana, and thus, were exempt from Texas sales taxes. The trial court properly granted the Department's motion for summary judgment for the taxes assessed in this case.

VI. STATUTORY PENALTIES
In its answer to the appeal, the Department argues that the trial court erred in ordering it to refund the penalties and interest thereon paid by McDermott under protest.
Louisiana Revised Statute 47:1602(A) provides for the imposition of penalties when a taxpayer fails to file a timely return or fails to timely remit taxes due on a return he has filed. Section 1602(A) provides, in pertinent part:
A. When any taxpayer fails to make and file any return required to be made under the provisions of this Subtitle before the time that the return becomes delinquent or when any taxpayer fails to timely remit to the secretary of the Department of Revenue and Taxation the total amount of tax that is due on a return which he has filed, there shall be imposed, in addition to any other penalties provided, a specific penalty to be added to the tax.
(1) In the case of a failure to file a tax return or of the filing of a return after the return becomes delinquent, the specific penalty shall be five percent of the total tax due on the return if the failure or delinquency is for not more than thirty days, with an additional five percent for each additional thirty days or fraction thereof during which the failure or delinquency continues, not to exceed twenty-five percent of the tax in the aggregate.
(2) Except as provided in Paragraph (3), in the case of the filing of a return without remittance of the full amount due, the specific penalty shall be five percent of the unremitted tax if the failure to remit continues for not more than thirty days, with an additional five percent for each additional thirty days or fraction during which the failure to remit continues. The penalty imposed by the Paragraph for each thirty-day period shall be calculated only on the additional amount due from the taxpayer after the deduction of payments timely submitted, or submitted during any preceding thirty-day period. The penalty provided by this Paragraph shall not be imposed for any thirty-day period for which the penalty provided by Paragraph (1) is due. The penalties provided for by Paragraph (1) of this Subsection and this Paragraph shall not be imposed for more than five thirty-day periods in total for each tax return required to be filed.
The trial court found that McDermott was not liable for penalties because it acted in good faith in paying Texas sales taxes. The Louisiana Supreme Court has recognized that a taxpayer's good faith in failing to file a tax return or in failing to timely remit taxes due is a defense to the imposition of penalties. BP Oil Company v. Plaquemines Parish Government, 93-1109 (La.9/6/94), 651 So.2d 1322, 1334; St. Pierre's *208 Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295, 1298 (La.1986). Our review of the trial court's finding of good faith is governed by the manifest error standard. St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d at 1298.
After a thorough review of the record, we find no manifest error in the trial court's determination that McDermott was not liable for penalties under the circumstances of this case.

VI. DECREE
For the foregoing reasons, this court's judgment is as follows: McDermott's motion to remand is DENIED; the Department's motion to strike is GRANTED IN PART and DENIED IN PART; the trial court's judgment, insofar as it grants the Department's motion for partial summary judgment for the taxes and interest at issue, is AFFIRMED; and the trial court's judgment, insofar as it orders a refund to McDermott for the penalties and interest thereon paid, is AFFIRMED.
Costs of this appeal in the amount of $563.58 are assessed equally between McDermott and the Department, each to pay $281.79.
NOTES
[1] The Honorable Ralph E. Tyson, Judge, Nineteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] As indicated by the suit caption, the plaintiff's former corporate name was OPI International, Inc. An amended application for Certificate of Authority form was filed and recorded with the Louisiana Secretary of State on March 31, 1995, changing the plaintiff's corporate name to J. Ray McDermott, Inc.
[3] By separate judgment dated August 6, 1996, the trial court awarded attorney fees associated with this litigation to the Department. That judgment was separately appealed. See J. Ray McDermott, Inc. formerly OPI International, Inc. v. Ben Morrison, Secretary of the Department of Revenue and Taxation, State of Louisiana, 96-2685 (La.App. 1st Cir. 11/7/97).
[4] In its petition, McDermott named Ben Morrison, former Secretary of the Department of Revenue and Taxation, as the proper defendant in the principal demand, pursuant to La. R.S. 47:1576(B). Subsequently, the trial court signed an order substituting John Neely Kennedy, Morrison's successor, as the proper defendant. We refer to the defendant as the Department.
[5] Regarding the amount awarded, the judgment stated:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment on the Reconventional Demand filed by the Department in favor of the Department and against McDermott for sales and use taxes for the period December 1, 1989 through and including December 31, 1992 in the sum of $495,025.22, plus interest thereon calculated to September 26, 1995 in the additional sum of $322,611.39, or a total of $817,636.61, and for additional sales and use taxes for the period January 1, 1993 to and including January 31, 1995 in the additional sum of $40,373.45, plus interest thereon calculated to September 26, 1995 in the additional sum of $11,376.90, or a total of $51,750.35.
[6] Louisiana Revised Statute 33:2718.2(A) provides:

A credit against the sales and use tax imposed by any political subdivision of the state shall be granted to a taxpayer who paid monies, whether or not paid in error, absent bad faith, based upon a similar tax, levy, or assessment upon the same tangible personal property in a political subdivision of another state, or a political subdivision of this state. The credit granted herein shall only be applicable when a similar taxing authority is seeking to impose and collect a similar tax, levy or assessment from a taxpayer upon the same tangible personal property for which the taxpayer has paid a similar tax, levy or assessment to a similar taxing authority.
[7] The amendment was the addition of Section D to La.R.S. 33:2718.2 by 1996 La. Acts No. 31, § 1. It provides:

For purposes of this Section, "taxpayer" shall mean the final consumer who has paid the applicable local tax directly to the taxing authority of a political subdivision or the vendor or seller who has collected the tax from the final consumer and remitted the tax to the taxing authority of a political subdivision. In no instance shall a vendor or seller be denied a credit for taxes paid in error to a political subdivision.
[8] Louisiana Revised Statute 47:303(A)(3) is discussed later in this opinion.
[9] Rule 2-12.13 of the Uniform Rules provides:

Briefs not in compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party or counsel of record may be ordered to file a new or amended brief.
[10] In its brief, McDermott also assigns error to the trial court's determination that the sales of the tangible personal property at issue occurred in Texas, rather than in Louisiana. Even if the sales were completed in Texas, this fact would not preclude the Department's assessment of a use tax on the property if it was brought into Louisiana for use after its purchase in Texas. Therefore, this assignment of error is without merit.
[11] Although there are exemptions from the general Louisiana sales tax imposition, no such exemptions are being claimed in this case. See La. R.S. 47:305-305.50.
[12] There is no dispute in this case that the taxes at issue are applicable to "tangible personal property" within the meaning of La. R.S. 47:301(16)(a).
[13] The Texas exemption from sales tax referenced by the Department is found in Texas Tax Code § 151.330, which reads, in pertinent part, as follows:

(a) The sale of tangible personal property that under the sales contract is shipped to a point outside this state is exempted from the sales tax imposed by Subchapter C of this chapter if the shipment is made by the seller by means of:
* * * * * *
(2) delivery by the seller to a carrier for shipment to a consignee at a point outside this state
....
[14] Louisiana Administrative Code 61:I.4307(A) provides, in pertinent part:

If a tax similar to that imposed by this Chapter is imposed by the state from which property is imported and if the state from which imported allows a credit to persons who import tangible personal property into that state for any sales or use tax which might have previously been paid to the State of Louisiana, a credit will be allowed against the Louisiana sales or use taxes for the tax paid to the other state....
Texas Tax Regulation § 3.340.25(b) provides, in pertinent part:
Credits. (1) ... Texas will allow as a credit against Texas use tax due any combined amounts of legally imposed sales or use taxes paid on the same property to another state or any subdivision of another state....
[15] Under La. C.C.P. art. 966(B), the evidence used to support a motion for summary judgment is limited to pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. No objection has been made that the documents submitted by the Department do not fit within these categories of evidence.