HUGHES, J.
| ¡.This appeal by defendant J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, acting on behalf of the Louisiana Department of Insurance (Department), arises out of a dispute with plaintiff Allstate Indemnity Company (Allstate). After the Department sought to impose a penalty on Allstate pursuant to La. R.S. 22:1072, Allstate brought suit in the Nineteenth Judicial District Court seeking declaratory judgment against the penalty.[1] The trial court decided in Allstate’s favor and this suspensive appeal by the Department followed. Allstate answered the appeal. For the reasons below, we affirm.
FACTS AND PROCEDURAL STANCE
Allstate brought this suit on September 26, 2003 seeking declaratory judgment against the Department’s attempted imposition of a penalty on Allstate’s payment of its 2002 premium tax.[2] In calculating the *1191 amount due for 2002, Allstate’s tax department applied multiple annual tax credits that it had earned in previous years pursuant to La. R.S. 22:1068(E)(l)(a), a tax credit program that allows insurers to deduct amounts based on sums they invest in Louisiana “capital companies.”[3] The program encourages insurers |sdoing business in Louisiana to participate in the State’s economic stimulation, technological development, and job creation efforts.[4]
According to its tax department’s understanding of the statute’s “carry forward” provision,[5] Allstate applied unused credits from previous years and calculated a total credit of $2,143,058.00, which it deducted from its total tax due of $2,547,274.00. The company filed timely before the March 1, 2003 deadline and included payment reflecting the difference of $404,216.00.[6] The Department received Allstate’s payment and subjected the return to routine auditing along with approximately fifteen hundred other such returns. During the course of this audit, which took several months, Allstate’s deductions raised a flag, at which time the assistant chief examiner of the Department’s tax division contacted Allstate to discuss the potential problem and seek clarification.
After what appears to have been solely telephone contact, the Department mailed a “courtesy letter” to Allstate on July 30, 2003 asserting that the company had overstated its credits in claiming over $2 million when in fact it was entitled to claim only $853,783.00. The letter instructed Allstate to pay $1,212,136.90 in addition to a twenty-five percent penalty of $303,034.22 pursuant to La. R.S. 22:1072 (quoted infra), which governs assessment of penalties for delinquency in payment of the premium tax.
Upon review, Allstate’s tax personnel agreed with the Department’s reading of La. R.S. 22:1068(E) and within thirty days of its receipt of the | ¿Department’s letter, Allstate paid the $1,212,136.90 tax due, but not the penalty amount of $303,034.22. The company disputed the penalty and requested a waiver, which the Department declined because it interpreted La. R.S. *1192 22:1072 penalties as mandatory and not within the discretion of the Commissioner of Insurance. Allstate requested a hearing on the issue, which the Department referred to the jurisdiction of the Nineteenth Judicial District Court, at which time Allstate brought this suit.
The Department reconvened, seeking enforcement of the penalty as well as an additional penalty for costs pursuant to La. R.S. 22:1081.[7] By this time, the same problem had arisen concerning Allstate’s taxes due for the first quarter of 2008. The parties stipulated to the following amounts: if the Department won, Allstate would owe penalty costs of $309,920.29 ($303,034.22 for 2002 and $6,886.07 for the first quarter of 2003); if Allstate won, it would owe no further amounts to the Department for 2002 and the Department would refund to Allstate the amount of $38,569.06, which it had taken from Allstate’s quarterly payment and applied as satisfaction of the penalty for the first quarter of 2003.
A bench trial was held on January 24, 2006 and in oral reasons handed down on February 17, 2006, the court found for Allstate, citing the company’s history of good corporate citizenship and good faith interpretation of the statute in calculating its taxes due. The court explained that it “read the case law to say that if there is a good faith provision even in a mandatory tax setting that Allstate is entitled to receive the benefit of their good faith.” The court found no penalty due for 2002 and ordered the 15Pepartment to refund to Allstate the sum of $38,569.06 in a judgment dated March 3, 2006.
After its motion for new trial or for judgment notwithstanding the verdict was denied, the Department brought this appeal assigning the following errors: (1) the trial court erred in finding a good faith exception to a mandatory tax,[8] (2) the trial court erred in failing to find that Allstate must pay a penalty since it did not file and pay its tax due in a timely manner, (3) the trial court erred in finding that it had authority to waive a mandatory tax penalty, and (4) the trial court erred in failing to impose penalties for the cost of this litigation.
Allstate answered the appeal, asking that if we reverse the trial court’s decision, we find that: (1) no penalty was owed because no additional taxes were owed, or in the alternative, that (2) the statute at issue does not authorize a penalty when a taxpayer timely files its return and pays the taxes as shown on its return, or in the alternative, that (3) the statute at issue does not authorize a penalty here because Allstate paid the additional assessed taxes within thirty days of its receipt of the assessment letter from the Department.
DISCUSSION
This matter brings before us a number of statutes as well as several more general policies and legal principles. The primary statute at issue is La. R.S. 22:1072, which empowers the Department to assess penalties when insurers’ license tax payments are deemed delinquent:
*1193 A. In case of any failure to make a report or to make payment of license tax as required by this Chapter, a penalty of five percent if one to thirty days late, of ten percent if thirty-one to sixty days late, of fifteen percent if sixty-one to ninety days late, of twenty percent if ninety-one to one hundred twenty [ Sdays late, or of twenty-five percent if more than one hundred twenty days late, shall be added to the amount of tax due and payable to the commissioner of insurance along with the tax due, unless evidence to his satisfaction is submitted to the commissioner to show that the failure was due to some unforeseen or unavoidable reason, other than mere neglect.
B. If the delinquency is for more than thirty days after the due date of the report or after the due date for payment of license taxes hereunder, neglect will be presumed and the penalty shall be added without any discretion on the part of the commissioner of insurance. After the lapse of thirty days, until the report is filed and the delinquent license paid, the commissioner of insurance shall revoke the authority of the delinquent taxpayer, and of all of said taxpayer’s agents to do business in this state.
C. In no event shall the penalty exceed twenty-five percent of the total amount of the tax due nor be less than twenty-five dollars.
The Department argues that Allstate’s erroneous calculation of its tax obligation left due a sum of over $1.2 million that remained unpaid until the Department contacted Allstate during the summer of 2003. The Department asserts that the $1.2 million was therefore delinquent for more than thirty days past the original due date of March 1, 2003 and thus subject to the maximum twenty-five percent penalty, roughly $300,000.00. The Department asserts that Allstate’s miscalculations: (1) amounted to “mere neglect” according to the statute, (2) are not defensible as either “unforeseen” or “unavoidable,” and (3) cannot be waived (despite Allstate’s good faith) because section (B) of the statute provides no discretion to the Commissioner of Insurance to, waive the penalty.
Allstate bases its argument against the penalty on its good faith reading of the tax credit statute sections that limit the amount of allowable credits and permit the tax credits to be carried forward on a company’s premium return, La. R.S. 22:1068(E)(2) and (3):
|7(2) The premium tax reduction determined as provided in Paragraph (1) of this Subsection shall be subject to the following limitations:
[[Image here]]
(c) For investments made on or after January 1, 1991 and before January 1, 1999, the tax reduction utilized in any year for any group of affiliates shall not exceed twenty-five percent of the gross premium tax liability for such group, before any credits, for the year in which the investment was made.
(3) The tax reduction as determined by Paragraph (1) of this Subsection and as limited in Paragraph (2) of this Subsection shall be applied as follows: (a) for tax reduction credits granted to investors prior to January 1, 2001, the tax reduction shall be applied to the premium tax liability not to exceed ten percent of the premium tax reduction in any one year until one hundred percent of the premium tax reduction has been claimed by the insurer.. .provided, the reduction in any taxable year shall not exceed the premium tax liability for such taxable year. Notwithstanding the provisions of this Paragraph to the contrary, if a holder of premium tax reduction credits authorized under this Sub *1194 section does not use credits that are generated after December 31, 1999, and which are eligible to be used in a given calendar year, those premium tax reduction credits may be carried forward and used in any subsequent year until such credits are exhausted; provided, the reduction in any taxable year shall not exceed the premium tax liability for such taxable year.
Allstate also points to a set of legal principles and rules of statutory construction. First, tax statutes are to be liberally interpreted in favor of the taxpayer and strictly construed against the taxing authority; any doubt or ambiguity in such statutes is resolved in favor of the taxpayer. Strain v. Almerico, 2000-0088, p. 5 (La.App. 1 Cir. 2/16/01), 808 So.2d 467, 470. Along these lines, where a tax statute is susceptive of more than one reasonable interpretation, the construction less onerous to the taxpayer must be adopted. Contract Mgmt. Services, Inc. v. State ex rel. Dep’t of Labor, Office of Employment Security, 98-2010, p. 6 (La.App. 1 Cir. 11/5/99), 745 So.2d 194, 198.
IsAlIstate relies likewise on the principle that statutes imposing penalties or sanctions are to be interpreted strictly against imposition of a penalty, especially against those who act in good faith. Vaughn v. Franklin, 2000-0291, p. 8 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 86, Frederick v. Ieyoub, 99-0616, p. 9 (La.App. 1 Cir. 5/12/00), 762 So.2d 144, 150. Allstate has provided several cases where this principle has applied in the tax context, including J. Ray McDermott, Inc. v. Morrison, 1996-2337, p. 18 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 207-08. The court there wrote: “[t]he Louisiana Supreme Court has recognized that a taxpayer’s good faith in failing to file a tax return or in failing to timely remit taxes due is a defense to the imposition of penalties.” Id. (citing BP Oil Co. v. Plaquemines Parish Gov’t, 93-1109, p. 20 (La.9/6/94), 651 So.2d 1322, 1334 and St. Pierre’s Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295, 1298 (La.1986).
Finally, the transcript of oral arguments on February 17, 2006 includes Allstate counsel’s statements that the legislative intent of the capital investment tax credit program reflects a clear policy choice to reward insurers for investing in the Louisiana’s economic health. In light of that goal, Allstate argues that the penalty statute should be strictly applied such that continued investment will be encouraged rather than thwarted.
Both sides have presented differing philosophical approaches to La. R.S. 22:1072. The Department seeks strict construction of the “letter” of the statute’s language to exclude a “good faith” exception that would negate the penalty. Allstate suggests a policy-based interpretation according to the “spirit” of the statute because penalty statutes are to be read against imposition of a penalty and also because tax statutes are to be interpreted in favor of the taxpayer and against the taxing authority.
1 ¡/While we agree with the Department’s argument for strict linguistic construction, we disagree with the Department’s interpretive focus on the statute’s limited exceptions when “unforeseen or unavoidable” reasons may excuse a penalty. The Department’s focus on individual words within the statute misses the forest for the trees. Taken as a whole, including its title, La. R.S. 22:1072 penalizes an insurer that is “late” or “delinquent” in filing or paying its premium tax. The penalty increases as the lateness or delinquency rises from thirty days to sixty days to ninety days to one hundred twenty days, then more. The plain language of the statute does not entail imposing a penalty *1195 on a payment that is made timely yet for an incorrect, disputable, or even erroneous amount.
By contrast, penalty statutes in the tax code under Title 47 clearly provide for the imposition of penalties on payments that are either untimely or incorrect. Louisiana Revised Statutes 47:1602 reads in pertinent part as follows:
A. When any taxpayer fails to make and file any return required to be made under the provisions of this Subtitle before the time that the return becomes delinquent or when any taxpayer fails to timely remit to the secretary of the Department of Revenue the total amount of tax that is due on a return which he has filed, there shall be imposed, in addition to any other penalties provided, a specific penalty to be added to the tax.
(1) In the case of a failure to file a tax return or of the filing of a return after the return becomes delinquent, the specific penalty shall be five percent of the total tax due on the return if the failure or delinquency is for not more than thirty days, with an additional five percent for each additional thirty days or fraction thereof during which the failure or delinquency continues, not to exceed twenty-five percent of the tax in the aggregate.
(2)(a) [I]n the case of the filing of a return without remittance of the full amount due, the specific penalty shall be five percent of the unremitted tax if the failure to remit continues for not more than thirty days, with an additional five | mpercent for each additional thirty days or fraction during which the failure to remit continues, (emphasis added)
Furthermore, the Department’s own “Policies and Procedures” publication includes extensive instructions for determining when a statement is “late” and how to proceed upon that determination. These, like the language of La. R.S. 22:1072, emphasize the problems associated with actual temporal lateness, including postmarks, overnight delivery services, and due dates. One such section reads: “A penalty is assessed in accordance with R.S. 22:1072, if a tax' statement is considered delinquent.”
It may indeed be the case that the Department of Insurance has the same power to penalize an insurer for an insufficient premium or license tax payment as the Department of Revenue has over all taxpayers. But our plain reading and strict construction of La. R.S. 22:1072, as well as the Department’s own internal policies and procedures for its application, convinces us that this statute cannot be the source of that power. Allstate should not have been penalized under La. R.S. 22:1072 for its timely yet incorrect premium tax payment.
The trial court based its decision for Allstate on its finding of a “good faith” exception against imposition of the penalty. Such an exception appears to be fairly established in Title 47 tax code jurisprudence, such as BP Oil Co., 93-1109 at p. 20, 651 So.2d at 1334[9] and St. Pierre’s, 495 So.2d at 1298.[10] While extending this good *1196 faith exception by analogy from the tax code to the insurance code may be a valid judicial tool, that matter [^need not be addressed today. As we agree with the trial court’s results, we affirm its judgment. The Department’s assignments of error are without merit. We thus need not reach the issues raised by Allstate in its answer to the Department’s appeal.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s judgment. Costs in the amount of $407.40 are to be assessed against appellant, J. Robert Wooley, Commissioner of Insurance for the State of Louisiana acting on behalf of the Louisiana Department of Insurance (Department).
AFFIRMED.
DOWNING, J., concurs.
PETTIGREW, J., concurs with the results.

. By letter dated September 2, 2003 the Chief Deputy Commissioner of Insurance advised Allstate counsel that the Department referred all disputes over contested premium tax issues to the Nineteenth Judicial District Court and not to the Division of Administrative Law.

. Pursuant to Louisiana Revised Statutes 22:1061, "[t]here is hereby levied an annual *1191 license tax...on each domestic, foreign, and alien insurer engaged in the business of issuing insurance policies, contracts, or obligations; issuing endowment policies; or similar forms of contract obligations in consideration of the payment of a premium or other consideration for the issuance of such policies, contracts, or obligations, whether such insurer be operating in this state through an agent, other representative, or otherwise.”

."Recognizing that it is also in the public interest to ensure sufficient availability of venture capital for purposes of technological development and job creation, the premium tax reduction for insurers investing in certified capital... or in industrial or economic development corporations... shall be computed as one hundred percent of the amount of the investment at the time the investment is made... .The investment shall be in the form of cash or debt instruments that are obligations of the investing insurance company to the certified capital company or the industrial or economic development corporation. Such debt instruments shall be converted into cash at a rate of not less than ten percent per year from the date of the investment."

. Louisiana Revised Statutes 22:1068(D) reads as follows: "Recognizing that it is in the public interest to... encourage investment in this state; and to enhance the economic and financial climate of the state, the legislature finds that a premium tax reduction for insurers investing in certain qualified Louisiana assets promotes the public interest.”

. Quoted infra at p. 1193.

. The parties' joint stipulations document indicates that Allstate had made quarterly payments for 2002 of $173,031.00, to which it added $231,185.00 payment with its statement mailed in late February 2003.

. "The commissioner is authorized to collect any delinquent taxes and fees under this Part, or to represent the department in any proceeding under this Part. If any delinquent taxes or fees due under this Part require institution of legal proceedings to collect such tax or fee, a penalty in an amount not to exceed twenty percent of the delinquent fee or tax shall be paid by the delinquent person to cover the cost of investigation, administration, and collection.”

. This assignment of error refers to a mandatory "tax” but the issue at hand is more properly one of a mandatory penalty.

. “There clearly was a genuine issue of .material fact as to BP’s good-faith belief that it had fulfilled its tax obligation.”

. "Considering the question of the taxpayer’s good faith and its effect upon the assessment of a penalty, we are unable to say the Board committed manifest error in its obvious con-elusion the taxpayer was in good faith....In Collector of Revenue v. J.L. Richardson Company, [247 So.2d 151 (La.App. 4th Cir. 1971)] supra, imposition of the penalty was declined because the taxpayer was under the belief it had a legal right not to make tax returns and its failure to file such returns was not done with any intention to avoid payment. This *1196 ease also presents an equitable situation warranting the taxpayer relief from the penalty phase of the assessment.”